402 P.2d 567

**STATE of Arizona, Appellee,**

v.

**George FIGUEROA, Appellant.**

No. 1414.

Supreme Court of Arizona.

En Banc.

June 3, 1965.

Darrell F. Smith, Atty. Gen., Phoenix, Robert W. Pickrell, Former Atty. Gen., Phoenix, Stirley Newell, Former Asst. Atty. Gen., Phoenix, for appellee.

Johnston & Gillenwater, Phoenix, for appellant.

LOCKWOOD, Chief Justice.

On March 30, 1962, the defendant was charged by information with the illegal sale of narcotics pursuant to A.R.S. § 36-1002.07, on February 2, 1962.

On May 25, 1962, the case came to trial and ended with a hung jury. Trial commenced again on June 8, 1962. Defendant was convicted and sentenced to five to ten years in the Arizona State Prison.

The sole prosecution witness to the alleged illegal sale was an informer, one Isidro Alderte. On direct examination the informer testified that he was an undercover agent for the State of Arizona and that he commenced working for the State on January 28, 1962, immediately after his release from the State Penitentiary in Florence,

Arizona, where he was serving a term for grand theft. Five days after he commenced working for the State of Arizona as an informer, February 2, 1962, he was in the Tivoli Bar in Phoenix with "another suspect". At 10 o'clock that night in the Tivoli Bar he saw the defendant enter the bar with three other men. At approximately 10:30 P.M. the defendant walked up to the informer and asked the informer if he wanted to buy "some weed". The other suspect was sitting with the informer at the time. The informer told the defendant "no, not right now, maybe later on." The informer also testified that the defendant approached him again at approximately 11:30 P.M. that evening while the informer was sitting alone and the defendant stated that he was broke and needed some money. He asked the informer if the latter still wanted to buy "a couple of weeds". The informer replied "all right". He and the defendant went to the men's rest room and the defendant pulled out a roll of approximately fifty cigarettes which were hand rolled in brown paper. The defendant asked how many the informer wanted. The informer replied "two would be enough". The informer testified that the defendant gave him two cigarettes and that he handed the defendant two one dollar bills. No one else was present in the rest room at the time of this transaction. Upon receiving the two cigarettes the informer put them in a book of matches and placed the package in his shirt pocket.

The informer and the defendant went back to the bar. At approximately 11:45 that evening Wayne Davis, a narcotics agent for the State of Arizona walked into the bar. When Agent Davis looked at the informer, the informer testified that he "just flipped my eyes on * * * the suspect next to me," and then Agent Davis left the bar.

The informer left the bar at about 1 o'clock, having stayed there approximately one hour after the defendant left him, and went to his room at the Denver Hotel. At about 3 o'clock in the morning he went to a cafe and telephoned Agent Davis, who told the informer to go back to his hotel. The informer then went to bed leaving the cigarettes in the pocket of his shirt which he placed on the back of the chair while he was sleeping. At 9 o'clock the next morning he put on this shirt again and went to the enforcement office, where he gave the book of matches to Agent Harrison in Agent Davis' presence. It was at that time that the informer initialed the cigarettes.

On cross examination the informer testified that he got out of the penitentiary in Florence on January 25, 1962, and went to work for the enforcement office three days later on January 28th. He had been convicted of the crime of grand theft on May 27, 1960. Defense counsel then asked the following question to which the state objected.

"Q. Do you remember what your sentence was at that time that you were—

"MR. CUNNINGHAM: I am going to object to pursuit of impeachment by this method. I don't think counsel needs to know the length or duration of sentence, nor do I feel it is proper for him to pursue it."

The court sustained the objection.

Defense counsel then asked the following questions and received the following answers:

"Q. Mr. Alderte, when you left Florence on January the 25th, under what conditions did you leave Florence?

"A. Expiration.

"Q. You had completed your sentence fully?

"A. Yes.

"Q. Were you approached by any law enforcement officer while you were in Florence, Arizona, to work as an undercover agent in return for releasing you from the penitentiary prematurely?

"A. No."

The informer testified that he had acted as an undercover agent in the State of Texas in the years of 1956, 1957 and 1958, for a month each year, during which time he was breaking in rookie patrolmen. He also testified that he was being paid $400.-00 a month as an informer in Arizona.

During the course of cross examination defendant's counsel asked the following question to which the state objected:

"Q. Now, you have a relative of yours, don't you, in Texas, who is in the penitentiary for violation of the narcotics laws?

"MR. CUNNINGHAM: I think this is highly immaterial as to any relative being in a penitentiary. I don't see where counsel can possibly connect this up.

"THE COURT: Well, will counsel avow that he will connect it up?

"MR. THOMAS: Well, your Honor, I am going to be very candid with the Court. I am not sure that I can. I mean, if I can."

The court sustained the objection and instructed the jury to disregard the question.

The informer testified that when he left the Arizona State Prison he contacted one of the state narcotic agents in the hope that there would be a job open, and asked for the job. He said that nobody had told him about the job and that he knew where to call by looking in the telephone book. This phone call was made on January 27th, two days after he got out of the State Prison. On January 28th he was employed, and the enforcement office agreed to pay him a salary.

Agent Davis testified that he did not see any cigarettes passed between the defendant and the informer. Davis also testified that he first met informer Alderte at 1 o'clock in the morning of January 26th at the Greyhound Bus Station; that this was

a few minutes after the informer had phoned Davis at the enforcement office. During the phone call the informer said he wanted to talk to Davis about obtaining employment as an undercover agent. After the meeting at the Bus Station the Superintendent of Liquor Licenses and Control, under whom state narcotic agents operate, hired Alderte. Agent Davis also testified that he does not trust all informers "who have prior criminal convictions"; that when he first meets them he usually watches "them pretty close, and after they have shown me they can be trusted, then I trust them."

The defendant contends that it was reversible error for the court to preclude defendant's counsel from asking the informer (1) whether he remembered what his sentence was, and (2) whether the informer had a relative in a penitentiary in Texas for violation of the narcotics laws. Defendant maintains these questions were asked of the main prosecution witness in an attempt to establish his motive for testifying against the defendant.

■ It is generally proper cross examination to impeach the credibility of a witness by showing that he has a motive to testify on behalf of the State, and great liberality should be given defense counsel in cross examination of a prosecution witness with respect to his motive for testifying. State v. Torres, 97 Ariz. 364, 400 P.2d 843 (April 7, 1965); State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120.

■ The informer, the sole witness to the alleged criminal act, had been in the employ of the State Narcotic Enforcement Division for less than five days; his employment commenced immediately after his release from the State Prison where he had been incarcerated for the crime of grand theft, and the narcotic agent allegedly knew nothing about the informer at the time of his employment. Under these circumstances, the court was limiting the defendant's right to cross examination unreasonably when it sustained the objection to the question "Do you remember what your sentence was at that time that you were—". The informer's testimony that he was released from Florence under the conditions of "expiration" and that he had "completed" his sentence fully, was equivocal, as it would be possible that such sentence could have been commuted from its original term. The jury should not be precluded from considering whether the sole prosecution witness to the alleged crime was influenced in his testimony by reason of rewards already granted or to be granted, for his making of cases for the enforcement agency. We do not hold such influences actually affected the witness' testimony, but point out that the jury should not be foreclosed from considering any testimony which may bear on the motive of such a witness. It was therefore prejudicial to defendant to refuse to allow his counsel to pursue this line of inquiry. For this reason the case must be reversed.

The trial court properly sustained the objection to defense counsel's question of whether the informer witness had a relative in the penitentiary in Texas for violation of the narcotics laws, on the ground that defense counsel could not avow that he would connect it with other evidence which would make it relevant.

Reversed and remanded for new trial.

STRUCKMEYER, V. C. J., and BERNSTEIN, UDALL, and McFARLAND, JJ., concurring.