422 P.2d 393

The STATE of Arizona and Pima County, State of Arizona, Petitioners,

v.

The SUPERIOR COURT IN AND FOR the COUNTY OF PIMA, State of Arizona, and the Honorable John P. Collins, Judge of the Superior Court, Division One, In and For the County of Pima, Respondents.

Nos. 2 CA–CIV 325, 2 CA–CIV 344.

Court of Appeals of Arizona.

Jan. 16, 1967.

Review Granted Feb. 21, 1967.

Darrell F. Smith, Atty. Gen., Edward W. Scruggs, Sp. Asst. Atty. Gen., Tucson, William J. Schafer, III, County Atty. of Pima County, for petitioners.

Johnson, Darrow, D'Antonio, Hayes & Morales, by Lawrence P. D'Antonio, Tucson, for respondents.

MOLLOY, Judge.

This court has granted oral argument on the motion for rehearing to consider new matter presented by the respondents in a motion for rehearing. The new matter brought to the attention of the court is the assertion that the respondent-judge was the designated "Assignment Judge" in Pima County at the time of the entry of the order directing that the subject grand jury be called into session and discharged and that, as such, he was vested with jurisdiction to so order under Criminal Rule 97(B), 17 A.R.S.

The position of "Assignment Judge" is established by Rule V of the Local Rules

of Procedure of the Superior Court in Pima County, 17 A.R.S., which were adopted in pursuance of Rule XIV of the Uniform Rules of Practice of the Superior Court of Arizona as adopted by the Supreme Court of this state, 17 A.R.S., under its constitutional powers. Rule V of the Local Rules of Pima County, in effect at all times concerned in this action, reads as follows:

"The Clerk of this Court shall furnish a Deputy Clerk to the Assignment Division to be known as the Assignment Clerk. Such Clerk shall devote full time to the work of the Assignment Division and shall be under the direction of the Assignment Judge.

"It shall be the duty of the Assignment Division to handle all the business of the Court, except juvenile matters, and, with the same exception, *the judges of the other divisions shall handle only matters assigned to them by the Assignment Judge.*

"All duties and powers of the Court Administrator and the acting Presiding Judge, as delineated by the Uniform Rules of Practice of the Superior Court, shall be vested in the Assignment Judge." (Emphasis added.)

During oral argument, this court was asked to take judicial notice of various facts outside of the record, including a press release stated to have been given as the result of a judges' conference held by the Pima County Superior Court bench at the time of the decision to call the subject grand jury. It is only through judicial notice that it can be known that the respondent-judge was the duly designated "Assignment Judge" on the day in question. We have previously had occasion to comment upon the close limitations placed upon the doctrine of judicial notice. In Bade v. Drachman, supplemental opinion, 4 Ariz. App. 55, 68, 417 P.2d 689, 702 (1966), wherein we quoted from previous pronouncements of our Supreme Court to the effect that the matter as to which judicial notice is to be taken " * * * must be capable of immediate accurate demonstration," and must be " * * * indisputable." (Quote from Phelps Dodge Corporation v. Ford, 68 Ariz. 190, 196, 203 P.2d 633, 638 (1949).)

We are in an area of information close to the personal knowledge of judges and lawyers, and hence we believe the doctrine of judicial notice can be extended to some reasonable degree. Matters of common knowledge in the court and to the legal profession within the venue of the particular court are generally accepted to be within the doctrine of judicial notice. 31 C.J.S. Evidence § 49, p. 1013.

However, even in the area of the activities of the court, we do not conceive it proper to look to the news media for judicial knowledge. And, even under the somewhat relaxed concept expressed above, we have some difficulty in establishing that the respondent-judge was the Assignment Judge in Pima County on the date of the entry of the order in question. Respondents' counsel has professed personal knowledge of such fact but the petitioner's counsel, while agreeing that the respondent-judge had been delegated such duty for the months of September and October, 1966, professed lack of knowledge as to who was the Assignment Judge on the day of the particular order (October 11, 1966). It is common knowledge, at least among the bench and bar in Pima County, that the Assignment Judge duty is rotated by means of schedules published by the Presiding Judge and that there is no formal order delegating the duty of Assignment Judge. Moreover, the duty may be informally transferred from day to day, depending upon the exigencies of the particular day's calendar and the availability of particular judges to try certain cases.

However, even if we accept what we believe was undoubtedly the fact—that the respondent-judge had the duties of the Assignment Judge on the occasion in question—we do not believe that such status gives authority for the order in question.

■ It is our view that the administrative powers vested in our Supreme Court over all of the courts of this state by our Constitution, Article 6, Section 3, Constitution of the State of Arizona, A.R.S., has been channeled by the Supreme Court through the Uniform Rules of Practice of the Superior Court, 17 A.R.S., to the Presiding Judge in each of the counties of the state. Under the quoted Rule V of the Local Rules of Pima County, this administrative authority has in turn been subdelegated to an "Assignment Judge," designated by the Presiding Judge.

■ We see an essential distinction between administrative and judicial powers, and as we interpret the applicable law, while the administrative powers of the Supreme Court have been delegated thusly to the Assignment Judge, there has been no increase in the judicial power or authority of such judge so as to give him the authority to overrule judicial decisions made by other judges in cases properly assigned to them.

The order in question was entered in a criminal action entitled "State of Arizona, Plaintiff, vs. Sol Ahee, Defendant", No. A–15496, and is a direction to take certain action, involving judicial discretion, in another proceeding before the court in another division:

"IT IS FURTHER ORDERED that the Grand Jury be called to immediate session and be discharged forthwith."

■ The calling of this grand jury, by the Presiding Judge, Judge Garrett, we believe was proper, either under the theory that as Presiding Judge he had the power to assign this particular judicial matter to himself under Rule I of the Uniform Rule of Practice of the Superior Court,[1] or under the concept that any superior court judge has the authority to call a grand jury under Rule 81, Rules of Criminal Procedure,[2] in which event there would be an automatic assignment of this particular judicial proceeding to the impaneling judge as a matter of course.

■ As we have previously indicated in our principal opinion, we see a continuity of responsibility in the impaneling judge that is similar to any other judicial proceedings in progress before a court. We see a decisive difference between the continuity of a grand jury proceeding and that of an ordinary civil action which is filed but as to which there is no judicial activity in progress other than being the repository of the particular action. As to the latter situation, we have previously held that when such an action requires judicial activity, as by the filing of a motion, and when such a case is regularly assigned to a division of the court, the judge of that division has the power to overrule a prior interlocutory order in that action, though this power should be sparingly exercised. Williams v. Garrett, 4 Ariz.App. 7, 417 P.2d 378 (1966).

But, when there is a judicial proceeding in progress, as when a jury is deliberating, whether it be a petit or a grand jury, we conceive that the judge to which such case has been assigned has the exclusive jurisdiction to determine whether such jury should be discharged, as, for instance, in the case of a petit jury, for inability to agree on a verdict, or, in a case of a grand jury, because it is no longer in the public interest to continue that jury in session.

1. Rule I of the Uniform Rules of Practice of the Superior Court reads, in part:
"The presiding judge in each county, in addition to exercising general administrative supervision over the court and the judges thereof, shall:
"(a) Make regular and special assignments of all judges, except as otherwise provided by A.R.S. section 8–202 (B), and, unless otherwise directed by the Chief Justice, assign judges within the county to other counties;
*   *   *   *   * "

2. Rule 81 of the Rules of Criminal Procedure reads as follows:
"No grand jury shall be summoned to attend upon the superior court except upon the order of a judge thereof when in his opinion public interest so demands."

In either event, if the Assignment Judge in his discretion should believe that the judge with the direct responsibility for such proceeding has erred in not exercising his discretion to discharge such jury, we are of the opinion that he has no authority to overrule the decision of the responsible judge and to direct that the order that he deems appropriate be entered in such proceeding. Whether under the administrative power above referred to a grand jury proceeding could be transferred from the responsibility of the impaneling judge, without his acquiescence, we do not decide, because such a situation is not presented here.

Respondents' counsel has rightly called attention to the lack of authority directly in point to support the holding herein made. Certainly, the question of law presented is not beyond cavil and it is easily understandable that the respondent-judge, who is well known among the bench and bar in Pima County as being both conscientious and courageous, was of the belief that it was his duty and obligation to order the subject grand jury discharged. Were the judicial responsibility for the grand jury in question properly before him, we would have no hesitancy in denying the writ now before us. However, it is apparent that neither this court nor the respondent-judge could have the same intimate knowledge of the work of this particular grand jury as the impaneling judge should have.

From the standpoint of orderly administration in our courts, we believe it to be the better policy to hold the impaneling judge responsible for the jury which he has called subject to appellate review for an abuse of discretion. We conceive that if the responsibility for determining when a grand jury should be discharged is to be passed from judge to judge under an assignment system,[3] it would be more probable that there would not be the degree of judicial supervision that we conceive the grand jury system merits.

We are asked to assume in the respondents' motion for rehearing that there was a substitution of judges as to the grand jury which was proper and in accordance with the lower court's orders and rules. Reference is made to the decisions of Midkiff v. State, 29 Ariz. 523, 243 P. 601 (1926), and Bellamack v. State, 37 Ariz. 344, 294 P. 622 (1930), in which decisions our Supreme Court approved a substitution of judges in a criminal case, without formal order.

Here, however, we fail to see any such substitution. There is no indication that the respondent-judge has assumed responsibility for the grand jury proceeding, or done any more in connection therewith than enter an order on October 11, 1966, that the same be called into session and discharged "forthwith." A writ of certiorari was issued by this court on October 18, 1966, which writ contained a stay order which we intended to apply only to the criminal action out of which the order in question originated. On December 28, 1966, this court issued a supplemental writ of certiorari requiring certification of the record in the matter of the impanelment of the subject grand jury, which order contained no provision staying proceedings. It has never been the intention of this court to stay the grand jury proceeding. The record certified to this court on January 6, 1967, pertaining to the grand jury proceeding indicates that no order has ever been entered by Judge Garrett, or any other judge, discharging the subject grand jury. We believe that this record of inaction establishes, without necessity of recourse to news media, that the impaneling judge was

---

3. It should be noted that while Rule V of the Local Rules of Pima County provides for assignment duty to remain with one judge for four months, at some time since the adoption of this rule, shorter stints have become the custom, a fact of which this court may be forgiven for taking judicial knowledge since two members of this court were members of the Pima County bench when such deviation from the written rule commenced.

exercising his discretion to hold the subject grand jury in session.

█ We do not accept respondents' position that this appellate court has no control over the discretion of the superior court when exercising its discretion to convene or discharge a grand jury. The quotation in respondents' motion for rehearing from the case of Petition of A & H Transportation, Inc., 319 F.2d 69 (4th Cir. 1963), cert. denied 375 U.S. 924, 84 S.Ct. 266, 11 L.Ed.2d 166 (1963), indicates a reluctance of an appellate court to " * * * inject itself into the discretionary area reserved * * *" to the lower court, but there is additional language in the decision suggesting that if there had been an abuse of discretion by the lower court, in failing to call a grand jury, the same might be corrected by special writ:

"*We find here no such abuse of discretion as would justify issuance of the extraordinary writ of mandamus.* It is evident from the Court's opinion that it gave careful consideration to the petitioner's request and to the alternative remedies, including a civil action for treble damages, available to the petitioner." (Emphasis added.) 319 F.2d at 71.

In Pennsylvania it is clearly established that the discretion of a lower court pertaining to a grand jury is subject to appellate review by special writ on an abuse of discretion: In re Philadelphia County Grand Jury, 347 Pa. 316, 32 A.2d 199 (1943); In re Petition of Grace, 397 Pa. 254, 154 A.2d 592 (1959);[4] see also Appeal of Hamilton, 407 Pa. 366, 180 A.2d 782 (1962), concurring opinion of Justice Cohen, 180 A.2d at 784.

For the foregoing reasons, the petition for rehearing is denied.

HATHAWAY, C. J., and KRUCKER, J., concur.

4. In the *Grace* decision, supra, the trial court was required, in a writ of prohibition proceeding brought on petition of

interested parties, to forthwith discharge a grand jury deemed by the appellate court to have been improvidently called: