425 P.2d 108

**STATE of Arizona, Appellee,**

**v.**

**Anthony BACA, Appellant.**

**No. 1588.**

Supreme Court of Arizona.

In Division.

March 15, 1967.

Rehearing Denied April 19, 1967.

**84**

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., for appellee.

Thomas J. McLaughlin, Phoenix, for appellant.

McFARLAND, Justice.

Anthony Baca, hereinafter referred to as defendant, was tried, convicted, and sentenced to serve not less than ten nor more than twelve years in the Arizona State Prison on each of two counts for the unlawful sale of narcotics, in violation of A. R.S. § 36–1002.02, as amended, the terms to be served concurrently. From the conviction and sentence he brings this appeal.

On January 3, 1964, Albert Duran Dominguez, a special employee of the Department of Liquor Licenses and Control, was driving an automobile on Jefferson Street in Phoenix, Arizona. Defendant waved to him, and asked for a ride to Grand Avenue. Defendant stated that he was going there to get some heroin, and agreed to get Dominguez some also, after being requested to do so by Dominguez. Dominguez then took defendant and three other persons to a point near Dominguez' home where he parked while he went home and got ten dollars to give defendant. Dominguez then took defendant to Grand Avenue, where defendant alighted from the car and walked away, returning shortly with a "paper" of heroin which he gave to Dominguez on the return trip to Jefferson Street. After letting defendant and the other persons off, Dominguez telephoned A. F. Barrios, agent for the Arizona State Narcotics Bureau of the Department of Liquor Licenses and Control. Agent Barrios went to Dominguez' home, and there received the heroin later introduced in evidence.

The following day—January 4, 1964—at approximately 7:00 in the evening, agent Barrios was again at Dominguez' home where he conducted a search of Dominguez' person, and gave him ten dollars with which to make a "buy" of narcotics. Dominguez then drove down Jefferson Street again with Agent Barrios following in another car. At the corner of Central Avenue and Jefferson, they encountered defendant, his wife, and brother-in-law. These three persons entered Dominguez' automobile, and defendant agreed to buy Dominguez a paper of heroin. They then drove to 5th Street where defendant got out and picked something up out of the grass, and gave it to his brother-in-law. The brother-in-law left the car, and they then drove to 2d Street and Jefferson, where they met one Moses. Defendant gave Moses the money, and told him he wanted two papers of heroin. Moses left for a short time and on his return Dominguez saw him give defendant something, and then Moses turned and gave Dominguez a paper of heroin. Dominguez then returned to his home, and turned the heroin over to agent Barrios. This second paper of heroin was also admitted in evidence. Agent Barrios identified defendant

as being in the car and present at the transaction with Moses. However, agent Barrios was unable to park sufficiently close to be able to overhear the conversation, as he was afraid he might be recognized. Agent Barrios positively identified the papers of heroin which Dominguez had initialled in his presence. These papers were later shown by expert testimony to contain a usable amount of heroin.

Defendant's first and most important question presented on this appeal is whether the trial court erred by limiting his cross-examination of Dominguez. Dominguez testified that he had at one time been a user of narcotics, but that at the time of the trial he had not used narcotics for two to two and a half years. Defendant's counsel directed attention to the needle scars on Dominguez' arms, and then proceeded with the cross-examination as follows:

"Q Have you had a needle in either arm injected by yourself in two and a half years?

"A Oh, yes, sir.

"Q When was that?

"A I couldn't say. During the time I was working for the state, and several occasions I had to go through the motions of taking a fix.

＊　＊　＊　＊　＊　＊

"Q Now first of all tell me why you had to go through the motions of taking a fix?

"A Because these people would more or less be curious as to why every time I buy from them, the heroin, I would leave.

＊　＊　＊　＊　＊　＊

"Q BY MR. McLAUGHLIN: Would you show these scars to these people?

"A No, no, not in the way you are speaking—go up and show it to them. No, I never did.

"Q So you were forced to pretend you were taking a fix?

"A Yes, sir.

"Q In order that they would sell the stuff to you?

"A Yes, sir.

"Q And how do you 'fix'? Tell the jury how you take a 'fix.'

"A How you take a fix or go through the motions?

"Q How you take a real one.

"A Well, you take—

"MR. MARTIN: Your Honor, I'm going to object again. Again this has nothing to do with this case, how he takes a fix or anyone else. The charge is not using narcotics here.

"THE COURT: No, there is no charge. I will sustain the objection."

Shortly thereafter the following offer of proof was made out of the presence of the jury:

"MR. McLAUGHLIN: All right. Now, my other point with which we were directly concerned now is that the man says he is going to feign taking a fix, and I want to show by his own testimony that this is something you cannot feign. That if you do it in front of a person, it's done. You can't pretend that you are putting something in your vein."

Defense counsel further stated that the reasons for pursuing this line of questioning were: 1. To show that Dominguez had used narcotics more recently than two years before the trial; 2. To show the witness's motive for falsifying his testimony in that his employment gave him an opportunity to acquire narcotics; and 3. To establish that he was presently addicted and thereby his veracity and ability to observe and testify would be detrimentally affected.

■ It should be noted that the question of whether Dominguez was addicted to the use of narcotics at either the time of the arrest or at the time of trial had already been asked several times, and each time had been answered in the negative. The cross-examination had then passed beyond the issue of addiction, and at the time the objection was sustained it was concentrated on the collateral question of the truthful-

ness of the informer's statement that he had inserted needles in his arms in order to allay suspicion. The trial court has large discretionary power in the control of cross-examination, and in order to find error we must find that the trial court has abused that discretion. State v. Goodyear, 98 Ariz. 304, 404 P.2d 397; Robles v. United States, 9 Cir., 279 F.2d 401, cert. denied, 365 U.S. 836, 81 S.Ct. 750, 5 L.Ed.2d 745, rehearing denied, 365 U.S. 890, 81 S.Ct. 1032, 6 L.Ed.2d 201.

Defendant relies on the case of State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A. L.R.2d 1120, in which we held that evidence would be admissible on cross-examination which would impeach the credibility of a witness by showing that he has a motive to testify in behalf of the state or against defendant. See also State v. Figueroa, 98 Ariz. 146, 402 P.2d 567; State v. Torres, 97 Ariz. 364, 400 P.2d 843. The instant case does not come within the application of the rule expressed in the Little case, supra. Even if Dominguez had answered the excluded questions in such a manner that the veracity of his previous statement would be in doubt, defendant would not have shown drug addiction or motive. The question of improper motive arising from benefits derived through Dominguez' employment had been thoroughly surveyed in previous cross-examination.

In the case of People v. Gonzales, 217 Cal.App.2d 41, 31 Cal.Rptr. 540, the prosecution's witness denied on cross-examination that he was addicted, stating that he had broken the habit some years ago, and the trial court sustained objections to the question "Will you show us your arms?" The court stated in its opinion as follows:

"It is obvious that the position of the appellant was to impeach the credibility of the witness under Code of Civil Procedure, section 2051, hoping that he would give contradictory evidence by showing that there were needle marks on his arms which would indicate that the witness was still a narcotics user. Had the arms revealed marks, nevertheless, the appellant would have had to prove that these were needle marks of the type generally accepted as prima facie evidence of engaging in the use of narcotics.

\* \* \* \* \* \*

"In this case we do not think that the failure to show the arms is sufficient to be prejudicial error, though the court should have allowed the arms to be shown and given the defendant a wide latitude in his cross-examination \* \* \*." 31 Cal.Rptr. at 543, 544.

■ In upholding the decision of the trial court in the instant case, we need not go as far as the decision in the Gonzales case, supra, as here defendant was allowed to inquire as to the marks on the witness's arms, and was going much farther afield in the scope of his cross-examination before the objections of the county attorney were sustained. The trial court did not abuse its discretion in so limiting the cross-examination.

Defendant contends that the evidence offered to prove that he sold narcotics was not credible under the circumstances, and was therefore insufficient to warrant submission to the jury. In the case of State v. Reyes, 99 Ariz. 257, 408 P.2d 400, the defendant's conviction was upheld on evidence very similar to that offered in the instant case. It was there said:

"Defendant contends that the evidence was insufficient to show that he sold the narcotics to the informer. This contention is unfounded, as is shown by the statement of facts. There was without question sufficient evidence to submit to the jury. Dominguez testified as to both sales. Agent Barrios testified that while he did not see the actual sale in the first count he had followed defendant to the place of the sale. There was uncontradicted evidence in both counts that the 'paper' which Dominguez furnished contained heroin." 99 Ariz. at 263, 408 P.2d at 403

■ Viewing the evidence in the light most favorable to the state, we find it

sufficient to support the conviction. State v. Reyes, supra.

 Defendant contends the trial court erred in refusing to give defendant's requested instruction number two. This alleged requested instruction is set forth in defendant's brief on appeal, but is not to be found in the record before this court. There is no record of defendant's objection, if any, to the trial court's refusal to give the requested instruction. It is an accepted rule of law that appellate courts will only consider such questions as were raised at the trial with respect to errors or omissions in the giving of instructions. Further, in criminal as well as civil actions, the party must state distinctly the matter to which he objects and the grounds of his objection. State v. Evans, 88 Ariz. 364, 356 P.2d 1106; State v. Lovell, 97 Ariz. 269, 399 P.2d 674. In the instant case, there is not only a lack of any record of proper objection, but the requested instruction itself is not included. Reading the instructions which were given as a whole, we find them to be comprehensive and fair to defendant.

Defendant also questions the sufficiency of the proof of a prior conviction in the State of New Mexico. The prosecution introduced in evidence a certified copy of defendant's record of commitment with an attached photograph and fingerprint card from the New Mexico State Penitentiary. The commitment certifies that one Anthony Baca was convicted of the crime of "BREAKING & ENTERING IN THE NIGHTTIME A SHOP; GRAND LARCENY," and that Anthony Baca was to be imprisoned not less than one nor more than three years. There is no question here as to the admissibility of this evidence, no objection having been made in the lower court, nor presented on this appeal.

 It is settled in this jurisdiction that the constitution, statutes, and reported court decisions of our sister states are a proper subject for judicial notice, and need not be proved by the party acting in reliance on them. Prudential Ins. Co. of America v. O'Grady, 97 Ariz. 9, 396 P.2d 246. We find the law in effect in the State of New Mexico at the time of the prior offense and conviction which concern what was then known as the crime of "Breaking and Entering into places other than dwellings" to define an offense, which, if committed in this state, would be a felony. N. M.S.A., 1953, 40–9–6 (repealed, N.M.Laws 1963, ch. 303, § 30–1); A.R.S. § 13–302; A.R.S. § 13–1650; Miller v. Cox, 67 N.M. 414, 356 P.2d 231.

 Defendant also contends that the evidence was insufficient to establish that defendant was the person to whom the record of conviction referred. The evidence not only contains a detailed description of the Anthony Baca who was convicted in New Mexico, but also includes prison photographs, or "mug shots." The evidence was sufficient to support the finding of the jury that defendant was convicted of a felony in the State of New Mexico. State v. Smith, 98 Ariz. 45, 401 P.2d 739.

Judgment affirmed.

STRUCKMEYER and LOCKWOOD, JJ., concur.