429 P.2d 670

**The STATE of Arizona, Appellee,**

**v.**

**Robert Allen NORGARD, Appellant.**

**2 CA–CR 86.**

Court of Appeals of Arizona.

July 5, 1967.

Rehearing Denied Aug. 2, 1967.

Review Denied Oct. 3, 1967.

Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, William J. Schafer, III, County Atty., Pima County, Tucson, for appellee.

Ralph E. Seefeldt, Tucson, for appellant.

MOLLOY, Judge.

This appeal presents questions relative to proof of prior conviction under our statute providing for increased punishment in the case of convicted defendants who are charged and found guilty of having been previously convicted of certain criminal offenses. A.R.S. § 13–1649.

The defendant in this case was convicted by a jury of the crime of attempted burglary. After the jury had brought in a verdict of guilty on the principal charge, the trial was reconvened in pursuance of Rule 291, Rules of Criminal Procedure, 17 A.R.S., to determine whether the defendant had been previously convicted on July 6, 1954, of the crime of obstructing a public officer.

During this subsequent trial, three matters occurred which are alleged here to be reversible error. The first two concern the admission of evidence which the defendant contends indicates that he was guilty of criminal conduct other than the crime of which he was convicted in the first part of the trial of this action and other than the crime charged under the prior conviction statute.

In seeking to have admitted, for identification purposes, fingerprints taken of the defendant on May 25, 1966, the detective who obtained these prints from the defendant was placed on the stand and the transcript indicates the following occurred:

"Q Did you have occasion to investigate a burglary that occurred on or about the 21st day of May, 1966, of the Western Auto store on South Sixth Avenue?

"A Yes, sir, I did.

"Q Did you have occasion, *as a result of this investigation* to make the arrest of one Robert Alien Norgard?

"A Yes, sir, I did.

"Q On what date was he arrested?

"A On the 25th of May, 1966.

"Q On the 25th of May, 1966?

"A That is correct.

"Q Where was he arrested?

"A At the City Jail annex, or 'farm' as it is called.

"Q Was he in custody at that time?

"A Yes, he was.

"Q And you arrested him on what charge?

"A *Burglary*, and *joy riding*.

"Q After he was placed under arrest at the City Jail, what did you do with him? Where did you take him?

"A A regular patrol car was called for to go down to jail and pick up Mr. Norgard and bring him from the City

Farm Jail down to the downtown jail to be re-booked.

"Q Was he booked at that time?

"A To my knowledge, yes." (Emphasis added)

This detective further testified that in the normal procedure of "booking" an arrested person, a "record sheet," was prepared and that a certain record, containing the fingerprints of the defendant, was the one prepared on this occasion. This booking record was subsequently admitted in evidence and there is no contention made here of insufficient authentication.

In order to relate these fingerprints to a prior conviction, the State introduced into evidence, over the defendant's objection, certified records of the Arizona State Prison. The certificate of the secretary of the Arizona State Prison states, *inter alia*:

"* * * that the

"(1) Photograph, (2) Fingerprint record and (3) Commitment attached hereto are copies of the original records of ROBERT ALLEN NORGARD, ARIZONA STATE PRISON NUMBERS, 17917, & 23167 a person heretofore committed to said penal institution and who served a term of imprisonment therein; that I have compared the foregoing and attached copies with their respective originals now on file in my office and each thereof contains, and is, a full, true and correct transcript and copy from its said original."

The signature of the secretary of the Arizona State Prison is authenticated by certificates of T. J. Mahoney, Presiding Judge of the Superior Court, Pinal County, and from Alma Jennings, Clerk of the Superior Court in Pinal County.

Attached to the certificate of the secretary of the Arizona State Prison is a copy of a "judgment and commitment" showing a conviction as to the charge of "Obstructing a Public Officer" as to "Robert A. Norgard," rendered in the Superior Court of Pima County on July 12, 1954, and which judgment and commitment imposed a sentence of not less than three nor more than five years to date from July 12, 1954. Also attached to the certificate were fingerprint impressions indicated by the form to have been made on November 11, 1961, under prison No. 23167 as to a "Robert A. Norgard" and also attached to the certificate is a photograph of an individual, in which photograph there is a clear portrayal of a sign, placed under the face of the individual photographed, bearing the inscription: "Arizona Prison, Nov. 11, 1961, 23167." The fingerprints attached to this certificate were identified by expert testimony as being the same as the prints taken on May 25, 1966, from the defendant.

A motion for mistrial because of the admission of the evidence above described was made and denied at the conclusion of the case. The sentence imposed by the court below was imprisonment for four and one-half to five years, a sentence in excess of the maximum sentence permitted for a first conviction of the offense charged in the information—attempted burglary, second degree, A.R.S. §§ 13–302, 13–108 and 13–110—but within the limit permitted if the prior conviction was properly established. A.R.S. § 13–1650.

■ It is well-established law that:

"* * * on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible." 22A C.J.S. Criminal Law § 682, at p. 730.

Among the Arizona authority establishing this general rule to be the law of this state are: Quen Guey v. State, 20 Ariz. 363, 181 P. 175 (1919); State v. Singleton, 66 Ariz. 49, 182 P.2d 920 (1947); State v. Martinez, 67 Ariz. 389, 198 P.2d 115 (1948); State v. Thomas, 71 Ariz. 423, 229 P.2d 246 (1951); and, State v. Gallagher, 97 Ariz. 1, 396 P.2d 241 (1964).

In applying this rule to the subject action, we believe it is important to remember the nature of the trial being conducted at the time the questioned evidence was admitted. This trial was not to prove the defendant's guilt or innocence of the previous crime, but to prove whether there had been a *conviction* regularly had and whether the defendant was the person so convicted. State v. Pennye, Ariz., 427 P.2d 525 (1967). The very essence of the *factum probandum* directed the proof towards a *record* of a conviction and evidence tending to show *identity* with that *record*.

■ That other offenses are established in the process of proving a fact in issue, is not necessarily erroneous. The rule of exclusion quoted above is directed at other offenses " * * * wholly independent of, and unconnected with, that for which he is on trial * * *." Statements of similar import can be found in the decisions of our Supreme Court applying the rule: Crowell v. State, 15 Ariz. 66, 71, 136 P. 279, 281 (1913), (" ' * * * evidence of a distinct, substantive offense * * * ' "); Quen Guey v. State, 20 Ariz. 363, 368, 181 P. 175, 177 (1919), ("the evidence concerning the prior assault sheds no light upon the transaction charged in the information * * * "); State v. Martinez, 67 Ariz. 389, 392, 198 P.2d 115, 116 (1948), (" * * * the commission by accused of other offenses entirely distinct and independent of that for which he is on trial * * * "); and, State v. Thomas, 71 Ariz. 423, 425, 229 P.2d 246 (1951), (which quotes *inter alia,* the quotations from State v. Martinez and Crowell v. State, supra).

But when the other offenses are not distinct and separate from the *factum probandum,* but are necessarily interrelated thereto, the exclusionary rule is not applicable:

"The trier of fact is entitled to have the disputed occurrence fixed in a background of the surrounding and accompanying events. These events shed light on the main issue and are received

though they incidentally show that the accused has committed another crime." Udall, Arizona Law of Evidence § 115, pp. 229–30.

■ Leading cases in this jurisdiction establishing the inapplicability of the subject exclusionary rule to evidence of other offenses which "complete the story" are: State v. Hardin, 99 Ariz. 56, 59, 406 P.2d 406 (1965); State v. George, 95 Ariz. 366, 369–370, 390 P.2d 899, 901–902 (1964); and State v. Villavicencio, 95 Ariz. 199, 201, 388 P.2d 245, 246 (1964). From this latter case we quote:

"Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime."

95 Ariz. at 201, 388 P.2d at 246.

In this action, it is, of course, very apparent that were a trial being conducted as to whether the defendant was guilty or innocent of the *crime* of obstructing a public officer in 1954, there would be no relationship whatsoever between the charge and the proof of "other offenses" as to which the defendant complains here. However, in view of the special nature of the judicial inquiry in progress, we can see a relationship between the proof adduced and the facts at issue, to wit, the record of a prior conviction and the identity of the person, the subject of such record.

■ We take judicial notice that in the records in the superior court of the State of Arizona in criminal proceedings there is usually no identifying information, such as a picture or fingerprints, made an integral part of a conviction record. State v. Superior Court In and For County of Pima, 4 Ariz.App. 562, 422 P.2d 393 (1967). Other than such evidence as arises from identity of names, the official record of the court is therefore inadequate to establish that which is sought to be proved in a trial such as this. See State v. Pennye, supra. In order to attempt to meet the burden of

proof cast upon it, we believe the State is entitled to go to any reasonable source of evidence and it is our view that the official records of the state penitentiary present one possible avenue of proof.

Our statutes require that the superintendent of the state prison shall maintain records of the "* * * finger and thumb prints, photographs, identification data, modus operandi reports and criminal records * * *" of prisoners confined to the state prison, together with a record of the sentence imposed. A.R.S. § 13–1251. A correlative duty is imposed by A.R.S. § 31–222, which requires the superintendent to keep a "* * * full and accurate record of each prisoner * * *" confined in the state prison.

Generally, rules of evidence in a criminal proceeding are the same as those for a civil trial:

"The law of evidence and the law relating to instructions to the jury in civil actions shall apply to criminal actions except as otherwise provided."

Rule 272, Rules of Criminal Procedure, 17 A.R.S.

■ Rule 44(g) Rules of Civil Procedure, 16 A.R.S., authorizes the introduction in evidence of official records, and there is no question raised here but what the records of the state prison were properly admitted under this exception to the hearsay rule.

■ That the records of the state prison were kept in such manner that the record of the conviction of 1954 was combined with a record of a conviction and sentence in 1961 is a circumstance relating to the proof available. There is no showing that the prosecution contrived to have the record kept in this manner. The defendant made no suggestion that any particular portions of this record be deleted. That there is an extra link in the chain of evidence, that is, that these records tended to prove that the defendant is the same person who was convicted in 1961 and that that person, in turn, was the same person convicted in 1954, we do not believe necessarily required the exclusion of the proof offered.

■ Whether to admit essentially irrelevant evidence, when it is connected in the available proof with relevant evidence, is a matter that calls for some discretion in the trial court:

"Questions with respect to the admissibility of such evidence have been said to be within the wise discretion of the trial court, whose rulings thereon should not be interfered with on review except where such discretion is abused * * *."

22A C.J.S. Criminal Law § 682, p. 737.

■ There is no showing that the prosecution attempted in argument, or in any other way, to use against the defendant innuendo in the record that the defendant was convicted of another felony in 1961. The defendant did not ask for a continuance to meet any proof admitted of a 1961 offense nor is there any suggestion now made that a false impression was imparted to the jury. The purpose of the prior conviction statute is to permit, in the court's discretion, a sentence that will be more appropriate to protect society from the habitually antisocial individual. It is particularly in the area of the repeating criminal that our society is failing in its efforts to protect its citizens.[1] We hold that it was within the discretion of the trial court to admit the Arizona State Prison record.

■ As to the testimony of the police officer pertaining to the arrest on May 25, 1966, (for "burglary" and "joy riding") the testimony was as to a surrounding circumstance of the taking of defendant's fingerprints, which were in turn to be used to prove identity. The defendant made no objection whatsoever when the testimony was elicited. During the trial of the action it had been established that the defendant had

---

1. See Uniform Crime Reports—1965, issued by Federal Bureau of Investigation, especially section entitled "Careers in Crime," at pp. 27–29.

used without the permission of the owner, a 1953 green Chevrolet station wagon in his activities in connection with breaking into a Western Auto store in Tucson, Arizona, in the early evening hours of May 21, 1966. The testimony of the arresting officer indicated the arrest was made "as the result of this investigation" of the Western Auto burglary. The trial court was of the impression that the arrest made on May 25th was an arrest arising out of the circumstances brought out in evidence during the trial in chief.[2] Though there is testimony that the defendant had been arrested on the night of the alleged offense, May 21, 1966, there is no showing in the record as to the reason for this previous arrest. The defendant's counsel chose not to cross-examine the arresting officer either in the presence of the jury or in its absence, to ascertain why the arrest had been made on May 25, 1966. It seems probable to this court that the jury gained no impression from this testimony that still another offense was involved. Under these circumstances, we uphold the discretion of the trial court in denying a mistrial for the admission of this testimony. Gray v. Gardiner, 92 Ariz. 208, 375 P.2d 562 (1962), and see State v. Cumbo, 96 Ariz. 385, 396 P.2d 11 (1964).

The defendant further complains that there was insufficient evidence to establish the prior conviction as a matter of law. As previously noted, the certificate of the secretary of the state prison certified that the photograph, fingerprint record and the commitment attached were copies of the original records of " * * * Robert Allen Norgard, Arizona State Prison Numbers, 17917, & 23167, a person heretofore committed to said penal institution * * *." We believe there is necessarily implicit in this certifi-

cate the assertion that the "Robert A. Norgard," a copy of whose judgment and commitment of 1954 was attached to the certificate, is the same person as the "Robert A. Norgard" whose fingerprints and picture were attached to the certificate, as taken on November 11, 1961.

We appreciate that in State v. Pennye, supra, our Supreme Court has held that the mere fact that a record of conviction bears the same name as that of the defendant charged with the prior conviction is insufficient, in and of itself, to establish identity beyond a reasonable doubt. However, we know of no case holding that the similarity of names is not some evidence of identity. The jurisdictions of this country are almost evenly divided on whether identity of names alone is sufficient to permit the trier of fact to find against the defendant on a charge of prior conviction. See Anno.—Prior Conviction—Identification, 11 A.L.R.2d 870, at pp. 884–90, and 1 A.L.R.2d Later Case Service, pp. 1153–54 (1965). In those jurisdictions taking the same view as our Supreme Court, in cases in which there has been some modicum of supplemental proof, the court has permitted proof to go to the jury. See Anno., supra, 11 A.L.R.2d at pp. 890–92, and 1 A.L.R.2d Later Case Service, pp. 1153–54 (1965).

In *Pennye*, our Supreme Court cited with approval: People v. Casey, 399 Ill. 374, 77 N.E.2d 812, 11 A.L.R.2d 865 (1948), which decision relies, in part, upon Iowa decisions of State v. Smith, 129 Iowa 709, 106 N.W. 187, 4 L.R.A.,N.S., 539 (1906), and State v. McCarty, 210 Iowa 173, 230 N.W. 379 (1930). The Supreme Court of Iowa has amplified upon these earlier Iowa decisions in State v. Post, 251 Iowa 345, 99 N.W.2d 314 (Iowa 1960). This decision

2. The following exchange occurred between the court and defense counsel:
"THE COURT: Before you go from that, the only reason that that is admissible in this matter is that there is no prejudice done because that obviously concerns the green Chevrolet that there has already been testimony about in the case in chief, so—

"MR. SEEFELDT: There is no evidence that that concerned that Chevrolet.
"THE COURT: Well, I think that it would be illogical to assume anything else, but you have your record on it."

quotes with approval from the previous decision of State v. Smith, supra:

"We grant that the identity of names may be some evidence of the identity of persons; but standing *alone*, it is not enough."

(Emphasis added) 99 N.W.2d at 318.

The following analysis of this evidentiary problem is pertinent:

"In regard to the supposed presumption of *identity of person* from *identity of name*, three things are to be premised:

"(*a*) 'A concordance in name alone is *always* some *evidence* of identity; and it is not correct to say with the books that, besides proof of the facts in relation to the persons named, their identity must be shown, implying that the agreement of name goes for nothing; whereas it is always a considerable step towards that conclusion.'

"(*b*) In the greater number of cases the ruling is merely that identity of name, with or without evidence, is or is not *sufficient evidence* to go to the jury or sufficient to support a verdict, on the general principle of sustaining the duty of producing evidence (*ante*, § 2494). The oddness of the name, the size of the region and the length of the time within which the persons are shown to have co-existed, and other circumstances, affect this result differently in different cases.

"(*c*) Often a *genuine presumption* is enforced by the Courts, in the sense that the duty of producing evidence to the contrary is thrown upon the opponent (*ante*, § 2487). But these rulings cannot be said to attach a presumption to a definite and constant set of facts; they apply the presumption upon the circumstances of the particular case."

9 Wigmore, Evidence § 2529, p. 453 (3d ed. 1940).

And see, generally in accord, 1 Wharton's Criminal Evidence § 100, p. 203 (12th ed.).

 Certainly the similarity of names here, together with the fingerprints established as being identical, and the pic-

ture which could be compared by the jury with the appearance of the defendant in the courtroom, when unrebutted by any evidence whatsoever, made out proof at least as strong as in the average criminal case permitted to go to the jury. Though proof beyond a reasonable doubt is required, State v. Pennye, supra, an appellant court will not set aside a jury verdict when there is "substantial evidence" to support the verdict. State v. Bearden, 99 Ariz. 1, 3, 405 P.2d 885 (1965), and see State v. Baca, 102 Ariz. 83, 425 P.2d 108 (1967).

Judgment affirmed.

KRUCKER, J., concurs.

HATHAWAY, Chief Judge (dissenting):

The State introduced a 1954 commitment form for a Robert Allen Norgard to the Arizona State Prison, No. 17917. I find no other evidence in the record connecting the defendant with the 1954 conviction. Attached to the 1954 commitment form were photographs and fingerprints taken at the Arizona State Prison of a Robert Allen Norgard in 1961, No. 23167. No photographs or fingerprints of Robert Allen Norgard admitted to the state prison in 1954 were introduced although the superintendent of the state prison is required to maintain "finger and thumbprints, photographs, identification data, modus operandi reports and criminal records of prisoners confined in the state prison * * *." A. R.S. § 13–1251. This statute was in effect in 1954 under the 1939 Code, § 45–209.

The State in no way attempted to explain why they had to use the photographs and fingerprints of the Robert Allen Norgard admitted in 1961 and could not use the photographs and fingerprints of Robert Allen Norgard admitted to the state prison in 1954. The State hoped to connect the 1954 commitment and the 1961 photographs and fingerprints to the defendant by the certificate of the secretary of the Arizona State Prison. I believe the majority lends too great credence to the certificate. The law requiring authentication of a copy of an

official record, Rule 44(g) of the Arizona Rules of Civil Procedure provides:

"1. An official record or any entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody."

I believe the authentication by the secretary of the Arizona State Prison's records represented only his verification that the photographs and fingerprints entered into evidence by the State were correct copies of the original photographs and fingerprints taken in 1961 of a Robert Allen Norgard; and, that the commitment form attached and admitted in evidence was a correct copy of the commitment form of a Robert Allen Norgard admitted in 1954. I do not believe, as the majority says, that:

"[T]here is necessarily implicit in this certificate the assertion that the 'Robert A. Norgard,' a copy of whose judgment and commitment of 1954 was attached to the certificate, is the same person as the 'Robert A. Norgard' whose fingerprints and picture were attached to the certificate, as taken on November 11, 1961."

It is prejudicial to the defendant to show a 1954 commitment in conjunction with photographs and fingerprints taken in 1961 for a separate conviction with no further connecting evidence between the two commitment records. All evidence introduced concerning any 1961 commitment to the Arizona State Prison of a Robert A. Norgard was irrelevant and therefore inadmissible:

"* * * where the facts offered consist of past misconduct, whether criminal or not, and being offered to show design, motive, intent, knowledge, or the like, are determined *not* to be relevant for any such purpose, it follows as of course, that they are also obnoxious to the character-rule and must be excluded. * * * Where they involved past misconduct, 'they are not only irrelevant, but they do

injury,' because they prejudice the accused by invoking his character, 'and for this additional reason they ought to be excluded.'" (Emphasis supplied)
1 Wigmore, Evidence (3d edition, 1940) p. 717.

The *Pennye* case cited by the majority, I respectfully submit, is strong authority for reversal here and has been misconstrued by the majority. For other Arizona cases in point see: State v. Cobb, 2 Ariz.App. 71, 406 P.2d 421 (1965); State v. Salazar, 3 Ariz.App. 114, 412 P.2d 289 (1966); and, State v. Miles, 3 Ariz.App. 377, 414 P.2d 765 (1966).

The trial court's judgment should be reversed as to the prior conviction and the cause should be remanded for a new trial regarding the alleged prior conviction and for resentencing in accordance with the result.