457 P.2d 301

**The STATE of Arizona, Appellee,**

v.

**Charles Henry JACKSON, Appellant.**

**No. 2 CA–CR 150.**

Court of Appeals of Arizona.

July 17, 1969.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty Gen., Phoenix, for appellee.

Giles & Moore, by Charles M. Giles, Tucson, for appellant.

HATHAWAY, Judge.

Mr. Jackson was charged with the crime of petty theft, allegedly committed on or about October 7, 1967. The information also charged him with one prior conviction of grand theft. Jackson entered a plea of not guilty, and denied the prior conviction.

**140**

The jury found him guilty of petty theft. Immediately following the guilty verdict, he waived jury trial on the issue of the prior conviction and that issue was tried to the court. The court found that he had been previously convicted of grand theft as charged and sentenced him to imprisonment for a term of not less than four nor more than five years.[1]

On October 7, 1967, at approximately 3 p. m., Mr. C. E. Crutchfield, a security officer for Globe Discount Store of Tucson, Arizona, observed Jackson near the front of the store. He remembered that Jackson was wearing low-cut blue and white tennis shoes at the time. Shortly thereafter he saw Jackson in the footwear department, eyeing a pair of western boots. Another store employee, Mary Bagalini, saw Jackson in the shoe department wearing a pair of dark tan cowboy boots. She next saw him walking toward the front of the store. Crutchfield followed Mr. Jackson to the store parking lot and asked him to return to the store. They returned and while near the front portion of the store, Jackson pulled off the boots he was wearing and remarked, "You can keep these boots but you are not going to keep me." Jackson left the store pursued by Crutchfield, but was not apprehended. Crutchfield returned to the store, called the police and picked up the boots which had been taken to the store information booth. Upon examination of the boots he determined that they were a brand of boots sold by Globe Discount Store. The boots were in new condition. The soles were unscuffed and the trademark clearly visible.

The information charged the theft of "one pair of brown Dodge City Western Boots, size 12D, of the value of less than $100.00 * * *." Mr. Crutchfield testified that the boots that were taken were "Olympia" brand. No attempt was made to conform the information to Crutchfield's testimony and the defendant contends that a fatal variance resulted.

A pair of brown boots, size 12D, with a "Dodge City" trademark, as described in the information, were admitted into evidence. The boots that were admitted had been marked by Crutchfield, after his return from chasing Jackson, to facilitate their future identification. The disagreement between the testimony and the exhibit relating to the brand name of the stolen boots raises a question of credibility for the jury's consideration. The jury is not compelled to give the testimony precedence over the physical evidence. We find that the evidence supports the charge in relation to the description of the boots.

Secondly, the appellant contends that no evidence was adduced at trial to identify him as the perpetrator of the crime. The State takes the position that there was but one defendant in the courtroom and as the testimony could refer to no one else, the witnesses were clearly referring to the defendant.

We have carefully scanned the record and find that the court identified the defendant by name at the outset of the trial. In the early stages of the examination of its first witness, Crutchfield, the prosecutor asked:

"Q Now, taking you back to this particular day, Mr. Crutchfield, do you recall seeing the defendant on that particular day, October 7, 1967?"

The witness responded in the affirmative and proceeded to relate the events of the burglary to "Mr. Jackson." The witness Bagalini was questioned quite specifically concerning the clothing worn by the thief and his general appearance. On cross-

1. A.R.S. § 13-1649:

"A. A person who, having been previously convicted * * * for any offense punishable by imprisonment in the state prison, commits any crime after such conviction, shall be punished upon conviction of such subsequent offense as follows:

*    *    *    *    *

"3. If the subsequent conviction is for petty theft * * * by imprisonment in the state prison for not to exceed five years."

examination the following testimony was elicited:

"Q  Are you able to estimate the age of the man that you saw?

A  40 or over, around 40.

Q  Can you recall ever previously describing him as a younger man than that?

A  Yes.

Q  When was that?

A  Last night.

Q  What age did you describe him at last night?

A  I said from about 28 to about 40.

Q  And you did that in a phone conversation with me didn't you?

A  Yes.

Q  Did you change your estimate of the age of the man after you had an opportunity to see him around the court house today?

A  No."

The testimony clearly relates to the defendant, Jackson, as the thief.

After the guilty verdict was brought in and when court was reconvened to determine the charged prior conviction, the jury having been waived, State's exhibit No. 3 containing two photographs, a series of fingerprints and a copy of a judgment and commitment, certified by the secretary of the Arizona State Prison and authenticated by a superior court judge and the clerk of the superior court of Pinal County, was admitted as official records of the Arizona State Prison. The defendant contends that insufficient foundation was laid for admission of the exhibit and that there was no evidence of a prior conviction without the exhibit.

The insufficiency of the foundation is attributed by the defendant to the repeal of A.R.S. § 13–1251 which requires the state prison to keep such information in connection with the bureau of criminal identification, formerly located at the state prison and controlled under the supervision of the superintendent of the state prison. A.

R.S. §§ 13–1241 to 1253, repealed, Laws 1968, Ch. 209, § 9. The duties of the abolished Bureau of Criminal Identification were transferred to the Criminal Identification section of the Arizona Highway Patrol. A.R.S. § 41–1750.

The records included within the exhibit were prepared before the responsibilities for criminal identification were transferred under the above sections. Even with the transfer the state prison is still required to maintain prisoner records under the following sections:

A.R.S. § 31–221:

"The secretary for the prison shall keep a register of prisoners in which shall be entered:

1.  The name of each prisoner.

2.  The crime of which he is convicted.

3.  The period of his sentence, from what county sentenced, and designation of the court.

4.  Place of birth.

5.  The extent and character of his education.

6.  An accurate description of the prisoner.

7.  Whether he has been previously confined in a state prison in this or another state, and if so, when and upon what condition he was discharged.

8.  Infractions of rules and the date and character of the infraction."

A.R.S. § 31–222:

"The superintendent of the prison shall keep at the prison a full and accurate record of each prisoner therein confined. The record shall include a biographical sketch of incidents which may indicate the causes of the criminal character or conduct of the prisoner, and also a record of the demeanor, education and labor performed by the prisoner while confined in the prison."

The exhibit was admissible as an official record kept under the mandate of the two sections just quoted. See State v.

Norgard, 6 Ariz.App. 36, 429 P.2d 670 (1967).

. The judgment is affirmed.

MOLLOY, C. J., and KRUCKER, J., concur.