694 P.2d 222

STATE of Arizona,
Appellee/Cross-Appellant,

v.

Viva Leroy NASH aka Paul Henderson,
Appellant/Cross-Appellee.

No. 5987.

Supreme Court of Arizona,
In Banc.

Jan. 9, 1985.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee/cross-appellant.

George M. Sterling, Jr., and John Antieau, Phoenix, for appellant/cross-appellee.

GORDON, Vice Chief Justice:

On November 9, 1982, the Maricopa County Grand Jury indicted appellant, Viva Leroy Nash, aka Paul Henderson, on one count of first degree murder, two counts of armed robbery, two counts of aggravated assault, and one count of theft of property with a value of more than $1,000. On May 25, 1983, upon advice of counsel, appellant agreed to submit the case to the trial judge for a determination of guilt or innocence based almost entirely upon the grand jury testimony.[1] Later that same day, the trial court found appellant guilty on all counts. After a subsequent half-day sentencing hearing, the trial court sentenced appellant to terms of incarceration for all crimes except the first degree murder, for which the trial court sentenced appellant to death. Appellant now timely appeals his convictions and sentences. This Court has jurisdiction under Ariz. Const. art. 6, § 5(3), and A.R.S. § 13–4031. We affirm the convictions and sentences. In view of our disposition of this case, we do not reach the merits of the state's cross-appeal.

The facts viewed in the light most favorable to upholding the verdict show that on October 15, 1982 appellant escaped from the Utah State Prison. On October 26, 1982, after arriving in Phoenix, appellant answered Richard Story's newspaper advertisement offering for sale a .357 Colt Trooper revolver. Appellant went to Story's home, and the two men agreed upon a price for the gun. When Story turned away to look for a cleaning kit, however, appellant loaded the gun and turned it upon Story. Forcing Story to bind himself with tape, appellant took the gun from

---

1. In addition to the grand jury testimony, both the prosecution and defense presented a summary of other facts to the trial judge for submission.

Story's home, leaving Story bound but otherwise physically unharmed.

On November 3, 1982 appellant entered the Moon Valley Coin Shop where Susan McCullough and Gregory West were working. Appellant approached West and began inquiring about purchasing some silver and gold. After speaking with West for a short time, appellant stated "I'll take it all," and pointed a revolver at West. As West sat motionless behind a counter, appellant shot West. As he fell to the right, however, West managed to grab a .38 caliber snubby revolver he kept behind the counter. Though he fired a shot at appellant, West missed. After West's failed attempt at self-defense and despite West's pleas for mercy, appellant shot his victim twice more. West subsequently died of his gunshot wounds. Though appellant pointed his gun at McCullough, he did not fire at her, and she escaped physical injury.

After fatally wounding West, appellant took approximately six hundred dollars in paper currency and coins from the shop. In attempting to flee the scene, appellant was confronted in front of the coin shop by Jack Owens, a neighboring businessman who had heard the commotion. Owens, his own pistol in hand, struggled with appellant outside the shop. During the fight Owens suffered a gunshot wound to his left hand from his own gun.

Police officers then arrived at the scene and arrested appellant. Though appellant claimed he had taken a bus to the crime scene, police officers found a stolen Ford van sixty feet from the coin shop, its motor running, with one of appellant's finger prints on a door handle. It was later determined that appellant used the stolen .357 Colt Trooper in the murder-robbery.

After appellant's indictment, defense counsel conducted an active defense. Appellant's public defender first pursued an insanity defense strategy. He moved to permit various psychiatrists to examine appellant, and the trial court ordered these examinations. Defense counsel also notified the court and the prosecution of the defense's intention to pursue the insanity defense. In addition, counsel filed evidentiary motions seeking the exclusion of much of the prosecution's evidence.

As the case went on, however, it became apparent that the insanity defense strategy had to change. Though the psychiatrists who examined appellant found varying degrees of mental impairment, none found Nash was legally insane under the *M'Naughten* test. Consequently, the prosecution moved *in limine* to exclude psychiatric testimony relating to appellant's intent or personality disorders. The trial court granted this motion.

After the granting of the motion *in limine*, the defense changed tactics. Despite the prosecution's stated intent to seek the death penalty, the defense agreed to submit the case to the trial judge for a determination of guilt or innocence based largely upon the grand jury transcript. After questioning appellant to determine if his consent to submit the case was made knowingly and intelligently, the trial judge agreed to submission. Shortly thereafter the trial judge found appellant guilty on all counts.

At the subsequent half-day sentencing hearing, both the state and the defense presented evidence and made arguments. The trial court found three aggravating circumstances: (1) that appellant had previously been convicted of other felonies in the United States involving the use or threat of violence to other persons, A.R.S. § 13–703(F)(2); (2) that in the commission of the offense, appellant knowingly created a grave risk of death to another person, namely Susan McCullough, A.R.S. § 13–703(F)(3); and (3) that appellant committed the offense as consideration for the receipt, or in expectation of the receipt, of something of pecuniary value, A.R.S. § 13–703(F)(5).

The trial court also failed to find any mitigating circumstances. Though the court found appellant mentally impaired, the court stated this impairment was not significant enough to constitute a mitigating circumstance. The court also refused to find appellant's old age or his commis-

sion of a felony murder to be mitigating circumstances. Thus, as there were three aggravating circumstances and no mitigating circumstances, the trial judge sentenced appellant to death.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant raises two issues connected to the ineffective assistance of counsel claim. Appellant first argues that absent a stipulation preventing imposition of the death penalty, an attorney's recommendation to the accused to plead guilty, to plead no contest, or to submit the case to the trial court is *per se* ineffective assistance of counsel in violation of the sixth and fourteenth amendments to the United States Constitution.

In Arizona, convicted defendants have needed to prove two facts to succeed in an ineffectiveness of counsel claim: (1) that counsel lacked minimal competence, *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982); and (2) that counsel's deficient performance prejudiced the defense. *State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984) (adopting second prong of test set out in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ).

We believe, however, that the time has come to further develop our concept of effective assistance of counsel. In *State v. Watson, supra*, this Court rejected the "farce, sham, or mockery of justice" standard for determining counsel's ineffectiveness. At that time, we said the "farce standard was originally developed under the fifth amendment's due process clause, and thus this test focused upon the overall fairness of the proceeding." *State v. Watson, supra*, 134 Ariz. at 4, 653 P.2d at 354 (citations omitted). In contrast, in recent years courts recognized that "the sixth amendment's affirmative grant of the right to counsel is to be considered as a particular requirement of due process demanding consideration separate and apart from the general notion of overall fairness." *Id.*

The culmination of much of this judicial recognition occurred in *Strickland v.*

*Washington, supra.* In that case, the United States Supreme Court set out a two-pronged test for determining counsel's effectiveness. First, the defendant must show that counsel's performance was deficient. According to the Court deficient performance is performance falling "below an objective standard of reasonableness. * * * The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." —— U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Second, the defendant must show that counsel's deficient performance prejudiced the defense. This Court adopted the second prong of *Strickland* in *Lee*.

We now believe it is time to adopt *Strickland's* first prong as well. Thus, counsel's performance will be judged upon a basis of "reasonableness under prevailing professional norms. * * * [T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, —— U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Thus, with any ineffectiveness of counsel claim we will examine the circumstances as they existed when counsel decided to represent a client in a certain way. These circumstances include not only the specific facts surrounding the trial, but the professional norms in the community.

This standard is an objective one, allowing courts to consult various sources to decide whether counsel's actions were reasonable considering the circumstances and the prevailing professional norms in the community. For example, American Bar Association standards, e.g. A.B.A. Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function") provide guides to what is reasonable. In addition, trial judges conducting hearings pursuant to Rule 32, Rules of Criminal Procedure, 17 A.R.S., may consider expert testimony to decide whether counsel's performance was reasonable under all the circumstances. Obviously, such sources are merely guides and do not represent rules

counsel must follow. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland v. Washington,* — U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

We adopt the first prong of *Strickland* for two reasons. First, we believe it is a logical refinement of our present test. Initially, we note the similarity between the *Strickland* and *Watson* tests. *See State v. Nightwine,* 137 Ariz. 499, 671 P.2d 1289 (App.1983). The *Strickland* test, however, is more objective than the *Watson* standard. Such an objective standard provides better guidance to lawyers and judges than does our more subjective test. Second, adopting the same standard as the United States Supreme Court provides the legal community with a uniform standard for judging counsel's performance. We believe such uniformity is desirable in this situation.

The standard we adopt today provides attorneys the necessary freedom to make tactical decisions. Our "scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* — U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. In addition,

> "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "

— U.S. at ——, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95.

■ Once a defendant proves counsel acted unreasonably, however, he must prove counsel's performance prejudiced the defense. *State v. Lee, supra.* According to the United States Supreme Court, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* — U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. In further defining this standard the Court stated:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

— U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Recognizing that counsel's unprofessional errors could affect the record, the Court set out guidelines for measuring such an effect:

> "Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 698–99.

■ Thus, convicted defendants need usually prove counsel's lack of minimal competence was prejudicial. In certain situations, however, courts will presume prejudice. The United States Supreme Court

has presumed prejudice where a defendant is denied counsel at a critical stage of trial or where counsel fails to subject the state's case to meaningful adversarial testing. See *United States v. Cronic*, — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In addition, this Court has presumed prejudice where counsel's acts and decisions approached those of a neutral observer of the trial. *State v. Carriger*, 132 Ariz. 301, 645 P.2d 816 (1982).

■ We now apply the above standards to the instant case. Appellant urges us to rule that submitting a death penalty case is presumptively ineffective assistance of counsel. We disagree. Admittedly, pleading guilty, pleading no contest, or submitting the case when the death penalty has not been waived may sometimes constitute ineffective assistance of counsel requiring reversal. Counsel, however, needs flexibility in representing a client. There may be valid tactical reasons in a given case why counsel would want to submit a case to the trial court. For example, the defendant may be obstreperous or obnoxious, and available defense witnesses may be hostile or unsavory. Keeping such witnesses off the stand by submission avoids poisoning the mind of the judge for the sentencing phase. Furthermore, submission avoids perpetuation of the state's witnesses testimony, making a possible subsequent trial more difficult for the state. Finally, submission may corroborate a theory of contrition and cooperation for sentencing.

Having decided that submission in the guilt phase is not *per se* ineffective assistance of counsel, we proceed to appellant's second ineffectiveness of counsel claim: even without a *per se* rule, does the record in this case demonstrate ineffective assistance of counsel? In making this determination, we review not only the guilt phase but the sentencing phase of the trial. Reviewing the record of this case, we find that appellant's ineffectiveness claim fails regarding both phases of the trial.

■ Prior to submission of the case, defense counsel acted reasonably under the circumstances. He filed appropriate motions at the appropriate times. He moved for and was granted psychiatric examinations of appellant. He attempted to exclude prosecution evidence on fourth amendment grounds. Given the prosecution's strong case, his pursuance of the insanity defense made sense.

■ Furthermore, submission based almost entirely upon the grand jury testimony was not unreasonable under the circumstances. When the psychiatric evidence showed appellant was not insane under the *M'Naughten* rule, the one feasible defense was virtually eliminated. The prosecution would present at least three key eye witnesses. One could testify that in the course of a robbery appellant took a gun from the witness' home. Another would testify that appellant entered the coin shop and murdered a defenseless Gregory West. Still a third would recount how he was shot in a struggle with appellant outside the shop after the murder. Further evidence would show that appellant robbed the coin shop, that appellant stole the Ford van, and that appellant used the stolen gun in the murder. Without an insanity defense, appellant was facing a sure conviction for first degree murder, other violent crimes, and theft.

In light of such evidence, defense counsel faced a difficult choice: go to trial and face a highly probable conviction, or submit and face sure conviction. In this situation we cannot say that submitting was unreasonable. It gave rise to several of the tactical advantages discussed above. First, it kept strong prosecution evidence out of the record. Thus, in the event of a retrial, the prosecution could face difficulties in reproving its case. In addition, submission could show appellant's willingness to cooperate, a possible mitigating factor during sentencing. Granted, these advantages appear marginal, at best, but it cannot be said that counsel was unreasonable in believing this strategy was his best choice at the time.

■ Proceeding to the sentencing phase of the trial, we also find that counsel pro-

vided reasonably effective assistance to appellant. The prosecution presented much evidence of numerous aggravating circumstances. In response, defense counsel made intelligent, prepared arguments. The trial judge, in fact, agreed with counsel's arguments respecting A.R.S. § 13–703(F)(1), (F)(6), and (F)(7). In addition, the trial court accepted counsel's arguments that appellant did not put Jack Owens in grave risk of death.

Counsel also presented sound information regarding mitigating circumstances. He offered the court a concise memorandum listing numerous mitigating circumstances. He also attached Dr. Donald Tatro's psychiatric report, which concluded that appellant suffered a mental impairment warranting leniency. Based upon these materials, counsel made competent arguments advocating a life sentence. Considering appellant's long history of violent crime and the seeming lack of evident mitigating circumstances, counsel's actions were reasonable under the circumstances. He provided reasonably effective assistance to appellant during the sentencing hearing.

## MOTION IN LIMINE

Appellant next contends that prior to submission the trial court committed reversible error by granting the state's motion *in limine* to preclude any expert testimony "concerning criminal intent, specific intent, personality traits or disorders or the effect of intoxication on the defendant's mental state at the time of the offense alleged in the indictment." According to appellant, Dr. Tatro's testimony would have shown that in killing Gregory West, appellant acted in self-defense caused by paranoid delusions. This evidence, appellant contends, is crucial to an allegation of intentional and premeditated murder, which appellant believes was the charge in this case. We disagree.

■ First, it is necessary to dispose of appellant's premise. Count I of the indictment alleged facts which constitute felony murder under A.R.S. § 13–1105. The trial

court convicted appellant on that count. Thus, the issue we consider here is whether the trial court abused its discretion in excluding psychiatric testimony regarding appellant's specific intent to commit felony-murder.

Because specific intent to commit murder is irrelevant to a felony-murder charge, A.R.S. § 13–1105(B), the trial court did not abuse its discretion in excluding the expert testimony. See *State v. Hallman*, 137 Ariz. 31, 668 P.2d 874 (1983); *State v. Hicks*, 133 Ariz. 64, 649 P.2d 267 (1982).

## THE CONSTITUTIONALITY OF THE ARIZONA DEATH PENALTY STATUTE

Appellant raises numerous issues regarding the constitutionality of A.R.S. § 13–703, the Arizona death penalty statute. We have previously considered most of these issues and need not reconsider them today. We will, however, consider the following issues.

### A. *13–703(F)(5) Pecuniary Gain*

Appellant maintains that "pecuniary gain", used as an aggravating factor in justifying the imposition of the death penalty, is vague and arbitrary, in violation of the eighth and fourteenth amendments. We disagree.

■ The United States Supreme Court has approved similar statutes making murder caused by an intent to rob an aggravating circumstance. See *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). We have also found A.R.S. § 13–703(F)(5) constitutional. See *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105, *cert. denied*, — U.S. —, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). We again hold A.R.S. § 13–703(F)(5) not unconstitutionally vague.

■ In a connected but non-constitutional argument, appellant maintains that

this Court's interpretation of A.R.S. § 13–703(F)(5) belies the legislative intent that "pecuniary gain" only apply to "murder for hire" situations. We rejected this argument in *State v. Clark*, 126 Ariz. 428, 616 P.2d 888, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), where this Court construed A.R.S. § 13–703(F)(5) to mean that the receipt of something of pecuniary value must be the impetus for the murder, not merely the result. See also *State v. Harding*, 137 Ariz. 278, 670 P.2d 383 (1983), *cert. denied*, — U.S. —, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984). Since we decided *Clark* in 1980, the Legislature has taken no action. We construe the Legislature's failure to change *Clark* as an approval of its holding. See Justice Gordon's special concurrence in *State v. Harding*, *supra*.

B. *The Standard for Determining whether Aggravating Circumstances Outweigh Mitigating Circumstances.*

■■■ Appellant also contends that Arizona's death penalty procedure violates the eighth and fourteenth amendments because it does not require the sentencing judge to find that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt. This argument is meritless.

In *Proffitt v. Florida*, *supra*, the Supreme Court validated a statute that did not require a jury to find beyond a reasonable doubt that aggravating circumstances outweighed mitigating circumstances. We continue to believe that our statute provides constitutionally acceptable standards for deciding whether aggravating circumstances outweigh mitigating factors. *See State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

C. *The Prosecution's Rebuttal Evidence and the Confrontation Clause.*

Appellant next maintains that this Court's interpretation of A.R.S. § 13–703 authorizing the trial court's reception of rebuttal evidence renders the statute violative of appellant's sixth amendment right to confrontation and the fourteenth amendment's mandate of due process. Appellant's central complaint surrounds this Court's interpretation of § 703(C) as permitting prosecution evidence rebutting mitigating circumstances regardless of the admissibility of the rebuttal evidence at trial. *See State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020, *cert. denied*, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982).

Though appellant's brief fails to specify what evidence the state used in rebuttal, appellant apparently refers to the state's exhibits eight and nine at the presentence hearing. The prosecution introduced this evidence to rebut appellant's mitigation evidence consisting of a psychiatric report contending that appellant had a serious mental impairment requiring leniency. The prosecution's rebuttal evidence in the form of two other psychiatrist's reports, stated that appellant was not impaired in his appreciation of the wrongfulness of his acts. Appellant maintains that the introduction of these reports without calling their authors to the witness stand violated appellant's sixth amendment right to confrontation. We disagree.

Appellant correctly argues that constitutional rights extend to the sentencing phase of a trial. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Neither the sixth amendment right to confrontation, nor the fourteenth amendment's guarantee of due process, however, is as strong at the sentencing phase as at trial. In *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed.2d 1337 (1949), the United States Supreme Court held that a defendant's right to confrontation was not violated when the trial judge considered in the capital sentencing phase information "obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine." 337 U.S. at 245, 69 S.Ct. at 1082, 93 L.Ed. at 1341. The Court justified this procedure with an historical analysis:

 " * * * [B]oth before and since the American colonies became a nation,

courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."

(footnote omitted) 337 U.S. at 246, 69 S.Ct. at 1082, 93 L.Ed. at 1341. Thus, the Court could not "say that the due process clause renders a sentence void merely because a judge gets additional out-of-court information to assist him in the exercise of this awesome power of imposing the death sentence." 337 U.S. at 252, 69 S.Ct. at 1085.

Though the Court limited *Williams* in *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), it remains permissible for a sentencing judge to consider information from out of court sources. In *Gardner*, the Court struck down a procedure whereby a trial judge considered in sentencing a defendant to death secret information kept from defendant's knowledge. *Gardner*, however, does not disallow all considerations of out-of-court information in sentencing. It simply prohibits consideration of information the defendant had an opportunity to neither explain nor deny.

■ Based upon this constitutional standard, we hold that the admission of the prosecution's rebuttal evidence in the instant case violated neither appellant's sixth nor his fourteenth amendment rights. The information in this evidence was disclosed to appellant. Appellant also had the opportunity to explain or deny this evidence. During presentation of appellant's mitigating circumstances, appellant introduced Dr. Tatro's favorable report. He knew, therefore, that the other unfavorable psychiatric reports could be introduced in rebuttal. At this point, then, appellant had the opportunity to explain or deny the information in those unfavorable reports.

## THE SUFFICIENCY OF THE EVIDENCE ESTABLISHING APPELLANT'S PRIOR CONVICTIONS.

Appellant next argues that the evidence used to prove his prior convictions was "insufficient as a matter of law." Appellant concedes that the evidence "may well show that Appellant was properly incarcerated within a penal institution of a foreign state * * *." Maintaining, however, that the prison records contain no authenticated copy of convictions on record with those foreign states, appellant argues there is no proof of the prior convictions. We disagree.

The evidence in question is prison records from Utah and Connecticut.[2] Those records reveal three prior felonies involving the use or threat of violence. The Connecticut records relating to a 1947 assault with intent to murder consist of a set of photographs, a "Record of Court Commitment," and a "State Prison Warrant." These records set out the crime appellant committed and his sentence. Though a set of fingerprints exist in the Connecticut records, they appear only in connection with a later escape conviction.

The Utah records contain two robbery convictions and a second degree murder conviction. The 1936 record for robbery contains a one-page copy of a document from the Utah State Prison. It lists appellant's name, contains his photograph, and states appellant was convicted of robbery, for which he received a sentence of five years to life. It also states appellant was received at the prison on February 4, 1936 and released on parole March 1, 1946. These 1936 records contain no fingerprints.

The 1978 records include a certified copy of a judgment and commitment sentencing Viva Leroy Nash to the Utah State Prison for aggravated robbery and second degree murder. The records also contain certified photographs and a commitment record from the Utah State Prison, specifying Nash's crimes and sentences. Finally, a

---

**2.** We do not consider the records from Leavenworth Federal Penitentiary because the trial

judge found no aggravating circumstances based on those records.

copy of a fingerprint card made after the 1978 crimes is contained in the records.

At the sentencing hearing, a fingerprint expert linked appellant to both the Connecticut and Utah records by way of fingerprint comparison.

When the prosecution alleges a prior conviction, it must prove two facts: (1) that the defendant in the present case and the one convicted in the prior case are the same individual, and (2) that there was in fact a prior conviction. *State v. Pennye*, 102 Ariz. 207, 427 P.2d 525 (1967). Appellant contends that the state has failed to prove the second of those elements. Thus, we must decide whether the state proved there were in fact prior convictions.

A prior conviction is proven by extrinsic evidence, usually in the form of a certified copy of a judgment of conviction. Udall, Law of Evidence 93 § 47 (Vol. 1 2d ed. 1982). Certified copies of a judgment of conviction, however, are not always required. See *State v. Stone*, 122 Ariz. 304, 594 P.2d 558 (App.1979) (certified copy of minute entry sufficient to prove prior conviction); *State v. Black*, 16 Ariz.App. 587, 494 P.2d 1332 (1972) (certified copy of fingerprint card in state prison records sufficient to prove prior convictions); *State v. Biscoe*, 112 Ariz. 98, 537 P.2d 968 (1975) (certified copy of minute entry sufficient to prove prior convictions). In *State v. Baca*, 102 Ariz. 83, 425 P.2d 108 (1967), the prosecution introduced a certified copy of defendant's New Mexico Prison records. These documents consisted of a record of commitment listing defendant's crime and sentence and a fingerprint card. This Court approved of such evidence as sufficient proof defendant had in fact been convicted of the crimes the prosecution alleged.

The evidence in the instant case is similar to that in *Baca*. The Connecticut records contain certified copies of appellant's photographs, and a commitment record stating the crime appellant was convicted of and his sentence. Later Connecticut records relating to an escape conviction contain appellant's fingerprints. The Utah records for the 1936 robbery are similar. Further, the Utah records for the 1978 robbery and murder consist of a certified copy of judgment and commitment along with fingerprint cards and, photographs of appellant.[3] We hold all this evidence sufficient to prove appellant's prior convictions.

## SUFFICIENCY OF EVIDENCE PROVING THE THEFT OF THE FORD VAN

Appellant next contends that the record contains insufficient evidence to support a conviction for theft of the Ford van. In short, appellant contends that the circumstantial evidence relating to the theft of the van could lead to numerous conclusions, only one of which indicates appellant's guilt. We disagree.

Appellant was convicted of theft of property with a value of more than one thousand dollars in violation of A.R.S. § 13–1802. To prove a violation of this statute the prosecution had to present evidence showing appellant, without lawful authority, knowingly controlled property worth more than one thousand dollars belonging to another with the intent to deprive such person of such property. See A.R.S. § 13–1802. The evidence in this case showed a Ford Econoline Van was missing from Sky Harbor Delivery Inc. A short time later, that same van was found near the murder scene with its motor running. Appellant's fingerprint was found upon the door handle of this van. Based upon this evidence, the trial court found appellant guilty of theft in violation of A.R.S. § 13–1802.

---

**3.** Though appellant has conceded he is the person referred to in these records, we note that the absence of fingerprints in the 1936 Utah records and the 1947 Connecticut records would not support a claim that these records fail to sufficiently prove appellant is the person referred to in the records. Appellant's later fingerprint records in both prisons link him to the past records. See *State v. Ross*, 107 Ariz. 240, 485 P.2d 810 (1971) and *State v. Norgard*, 6 Ariz.App. 36, 429 P.2d 670 (1967).

In *State v. Tison,* 129 Ariz. 546, 633 P.2d 355 (1981), *cert. denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982), we stated:

"On appeal, this court will not engage in re-weighing the evidence. It will be viewed in the light most favorable to sustaining the conviction and all reasonable inferences will be resolved against a defendant. The test to be applied is whether there is substantial evidence to support a guilty verdict. In the recent case of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) it was held that due process requires a court to utilize as the standard of review whether there was sufficient evidence that a rational trier of fact could have found guilt beyond a reasonable doubt. (citations omitted).

129 Ariz. at 552, 633 P.2d at 361.

■ Applying this standard of review, we find there was sufficient evidence that a rational trier of fact could have found guilt beyond a reasonable doubt. Based upon the facts that the van was missing, that it was found near the scene where appellant robbed the coin shop and murdered West, and that appellant's fingerprint was found on the van, a rational trier of fact could conclude appellant stole the van and drove it to the murder scene.

■ Furthermore, the lack of direct evidence of guilt does not preclude such a conclusion. Criminal convictions may rest solely on circumstantial proof. *State v. Tison, supra. State v. Carriger,* 123 Ariz. 335, 599 P.2d 788 *cert. denied,* 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1979). Moreover, it is unnecessary for the prosecution to negate every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence. *State v. Olivas,* 119 Ariz. 22, 579 P.2d 60 (App. 1978).

## INDEPENDENT REVIEW

■ As in all death penalty cases, this Court independently reviews the record to determine the presence or absence of aggravating and mitigating circumstances, and the weight to be given to each. We

must also determine the propriety of the sentence. *State v. Hensley,* 142 Ariz. 598, 691 P.2d 689 (1984); *State v. Jeffers, supra; State v. Gretzler, supra.*

### A. Aggravating Circumstances

The trial court found three aggravating circumstances: A.R.S. § 13–703(F)(2), (F)(3), and (F)(5).

A.R.S. § 13–703(F)(2) provides that the sentencing court must consider it an aggravating circumstance if "[t]he defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person." In the instant case, the prosecution presented sufficient evidence that appellant was convicted of robbery in 1936, of assault with intent to murder in 1947, and with aggravated robbery and second degree murder in 1978. Appellant argues, however, that without testimony regarding the specific facts of each crime, we cannot judicially notice that those crimes were violent felonies upon other persons. We disagree.

■ This Court may take judicial notice that certain crimes are, by definition, violent felonies against others. *See State v. Baca, supra.* We take judicial notice that, by definition, all three of appellant's prior convictions were violent felonies committed against other persons. *See* generally LaFave & Scott, Handbook on Criminal Law (1972).

■ The trial court next found that in the commission of the offense the defendant knowingly created a grave risk of death to another person, namely Susan McCullough. A.R.S. § 13–703(F)(3). This statute provides that the sentencing court must consider it an aggravating circumstance if "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense." In each of the Arizona cases where the finding of this aggravating circumstance has been affirmed, the murderous act itself put other people in the zone of danger. *See State v. McCall,* 139 Ariz.

147, 677 P.2d 920 (1984) and cases cited therein.

We believe appellant put Susan McCullough in the zone of danger during his murder of Gregory West. The record reveals that after appellant shot West for the first time, he pointed his gun at Susan McCullough. She testified she was five feet from appellant when he pointed the gun at her. When West then attempted to shoot appellant, appellant quickly turned and fired twice more at West. McCullough escaped physical injury by crawling under a desk while appellant took valuables from the store.

The instant case is analogous to those cases where defendants fire guns in crowded areas. *See State v. Doss*, 116 Ariz. 156, 568 P.2d 1054 (1977); *State v. Blazak*, 131 Ariz. 598, 643 P.2d 694, *cert. denied*, 459 U.S. 882, 74 L.Ed.2d 149, 103 S.Ct. 184 (1982). Though the coin shop was not crowded, Susan McCullough was within close proximity of Gregory West. Appellant fired three shots in that close vicinity and he pointed the murder weapon at McCullough in the course of the murderous act. In combination, these two factors put McCullough in a zone of danger, and, therefore, in grave risk of death. We note that the instant case is distinguishable from *State v. Jeffers, supra,* (defendant pointed a gun at a third party merely to quiet her, but had no intent to harm her; murder of victim by other means at a later time did not subject third party to danger.)

Lastly, the trial court found appellant committed the offense as consideration for the receipt, or in expectation of the receipt, of something of pecuniary value. In *State v. Hensley, supra,* we said:

"The language in A.R.S. § 13–703(F)(5) makes clear, however, that this aggravating circumstances does not apply in every situation where an individual has been killed while at the same time the defendant has made a financial gain. It is limited to those situations where 'the defendant committed the offense * * * *in the expectation* of the receipt of anything of pecuniary value.' A.R.S. § 13–

703(F)(5) (emphasis added). In other words, the hope of pecuniary gain must provide the impetus for the murder. For example, if a beneficiary killed an insured in order to gain the proceeds of a life insurance policy this aggravating circumstance would be satisfied. On the other hand, an unexpected or accidental death that was not in furtherance of the defendant's goal of pecuniary gain, which occurs during the course of or flight from a robbery, does not in itself provide a sufficient basis for finding the same aggravating circumstance. The aggravating circumstance in paragraph 5 should be found only in those cases where the murder is part of the defendant's overall goal of pecuniary gain, not merely when a death occurs during which time the defendant benefitted financially." (emphasis in original)
142 Ariz. at 603–604, 691 P.2d at 694–695.

■ In this case, we find the murder was part of the overall scheme of the robbery with the specific purpose to facilitate obtaining items of pecuniary value. Appellant stole a revolver and a van and drove to the coin shop. He entered the coin shop with the gun and a duffel bag. He demanded money from West then immediately shot West as he sat defenseless behind the counter. Appellant shot West twice more after West tried to shoot him. As West lay dying on the floor, appellant took money from the store. These facts show a plan to rob and a murder which furthered that plan. The murder was not unexpected or accidental. *Cf. State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982) (drowning Purolator guards after robbery); *State v. Gretzler, supra.* (defendants committed murders "to obtain a substitute car in which they could continue their flight"); *State v. Tison, supra,* (killings committed to secure a vehicle in which assailants could continue their flight.)

■ Furthermore, we do not find the murder was motivated by self-defense. Appellant fired the first shot, and he fired it as West sat behind the counter with both

his hands resting on the counter top. Though West did manage to grab a pistol and fire a shot as he fell backwards, his shot missed. After he fired this shot, he offered no further resistance. Rather, he begged appellant for mercy. Ignoring these pleas, appellant shot West twice more. These facts preclude a conclusion that self-defense motivated appellant to kill West.

### B. Mitigating Factors

We find no mitigating factors in the instant case.

 Appellant offered credible evidence that he was mentally impaired at the time of the murder and that such mental impairment should be considered a mitigating factor. In contrast, the prosecution offered equally credible rebuttal evidence that although appellant suffered some mental impairment, it was not significant enough to be a mitigating circumstance. Appellant's evidence failed to outweigh the prosecution's rebuttal evidence.

Appellant also contends his advanced age (67) should be a mitigating factor. While we do not foreclose the possibility that old age can be a mitigating factor, See State v. Waldrip, 111 Ariz. 516, 533 P.2d 1151 (1975), the instant case fails to warrant such a finding. Appellant has lead a life of crime. His pattern of violence against fellow human beings has persisted from his youth to the present time. In such a situation, appellant's years do not warrant leniency.

We find no other possible mitigating factors.

### Proportionality Review

 Lastly, this Court conducts a proportionality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." State v. Hensley, supra; State v. Richmond, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976) cert. denied. 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). Here, we have examined cases in which the defendant received the death penalty based on one or more of the aggravating circumstances found in appellant's case. See, e.g., State v. Harding, 141 Ariz. 492, 687 P.2d 1247 (1984) (no mitigating circumstances shown; death penalty affirmed upon a finding that defendant had previously been convicted of a crime for which a life or death sentence was imposable in Arizona, that he had previously been convicted of a felony involving the use or threat of violence on another person, that the murder was committed in expectation of pecuniary gain and in an especially heinous, cruel, or depraved manner); State v. Fisher, 141 Ariz. 227, 686 P.2d 750 (1984) (no mitigating circumstances shown; death penalty affirmed upon finding that killing was done in expectation of pecuniary gain and in a heinous and depraved manner); State v. Libberton, 141 Ariz. 132, 685 P.2d 1284 (1984) (no mitigating circumstances found; death penalty affirmed upon finding that murder was committed for pecuniary gain and in an especially heinous, cruel or depraved manner); State v. Summerlin, 138 Ariz. 426, 675 P.2d 686 (1983) (no mitigating circumstances found; death affirmed upon finding that defendant had previously been convicted of a felony involving the use or threat of violence on another person and that crime was committed in an especially heinous, cruel, or depraved manner); State v. Richmond, supra (no mitigating circumstances found; death sentence affirmed upon finding that defendant had previously been convicted of a crime punishable by life or death and that defendant had previously been convicted of felonies involving the use or threat of violence upon other people); State v. Blazak, 131 Ariz. 598, 643 P.2d 694 cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982) (no mitigating circumstances found; death penalty affirmed upon finding that defendant had prior convictions punishable by life sentences and prior felony convictions involving violence, that crime created grave risk of death to others and that offense committed for pecuniary gain); State v. Britson, 130 Ariz. 380, 636 P.2d 628 (1981) (no mitigating circumstances

found; death sentence affirmed upon finding that defendant had prior felony convictions involving threat or use of violence upon others); *State v. Greenawalt,* 128 Ariz. 150, 624 P.2d 828 *cert. denied,* 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981) (no mitigating factors found; death sentence affirmed upon finding that defendant had previous convictions punishable by life or death and that those previous convictions were violent felonies); *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825 *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980) (no mitigating factors; death sentence affirmed upon finding that defendant had previous convictions punishable by life or death and that those previous convictions were violent felonies); *State v. Evans,* 120 Ariz. 158, 584 P.2d 1149 (1978) *cert. denied,* 449 U.S. 891, 101 S.Ct. 252, 66 L.Ed.2d 119 (1980) (no mitigating factors found; death sentence affirmed upon finding that defendant had prior felony conviction involving threat and use of violence on another person).

■ We have also examined cases in which the death penalty was reduced to life imprisonment. *See, e.g., State v. Graham,* 135 Ariz. 209, 660 P.2d 460 (1983) (defendant's capacity to appreciate wrongfulness of act, his drug addiction caused by mental health treatment since age seven, his lack of adult convictions, his non-violent juvenile criminal record, and fact that friend influenced him at time of crime outweighed fact that crime was committed with expectation of pecuniary gain); *State v. Valencia,* 132 Ariz. 248, 645 P.2d 239 (1982) (defendant's youth outweighed previous felony convictions involving threat or use of violence); *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981) (finding that defendant was young, that he had been a model prisoner, that defendant was trying to better himself and that murder committed in a shootout in which victim fired first outweighed aggravating factors of previous convictions involving life sentence and involving use or threat of violence). We find that imposition of the death penalty in this case is not disproportionate to the imposition of the death penalty in prior cases in this state.

We believe imposition of the death penalty is justified.

Pursuant to A.R.S. § 13–4035, we have examined the entire record for fundamental error and have found none. Appellant has submitted pro per briefs to this Court. To the extent we do not discuss his arguments, we find them meritless. The judgments of conviction and the sentences are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.