IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,           )
                                )
                    Appellee,   )      2 CA-CR 2012-0094
                                )      DEPARTMENT A
            v.                  )
                                )      O P I N I O N
RANDALL SHANNON GRAY,           )
                                )
                    Appellant.  )
                                )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20103802001

Honorable Jose Robles, Judge Pro Tempore

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani, Joseph T. Maziarz, and
    Diane Leigh Hunt                                            Tucson
                                              Attorneys for Appellee


Lori J. Lefferts, Pima County Public Defender
  By Michael J. Miller                                         Tucson
                                              Attorneys for Appellant


E C K E R S T R O M, Presiding Judge.

**¶1** After a jury trial, appellant Randall Gray was convicted of criminal damage, attempted theft by control, possession of burglary tools, and four counts of third-degree burglary.[1] The trial court sentenced him to concurrent, maximum sentences, the longest of which are six years. Gray contends the court erred when it denied his motion for a judgment of acquittal made with codefendant Wesley Wallace at the close of the state's case and renewed after trial. *See* Ariz. R. Crim. P. 20(a). For the reasons stated below, we affirm.

**¶2** A motion for a judgment of acquittal should be granted only if "there is no substantial evidence to warrant a conviction." *Id.*; *accord State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990), *quoting State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). We review the denial of a Rule 20 motion de novo. *State v. West*, 226 Ariz. 559, ¶ 15, 250 P.3d 1188, 1191 (2011). "If reasonable minds can differ on the inferences to be drawn from the evidence, a trial court has no discretion to enter a judgment of acquittal and must submit the case to the jury." *State v. Alvarez*, 210 Ariz. 24, ¶ 10, 107 P.3d 350, 353 (App. 2005), *vacated in part on other grounds*, 213 Ariz. 467, 143 P.3d 668 (App. 2006).

---

[1]Gray also pled guilty to interfering with a police service dog.

¶3         In determining whether substantial evidence exists, we view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts. *State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 914 (2005). So viewed, the evidence established that on the night of October 24, 2010, the general manager of Daniel's Moving and Storage reported a possible burglary in its warehouse. The warehouse was occupied by two additional businesses (a golf cart business and Bekins Moving Solutions), all separated by interior walls. The general manager of Daniel's had found its forklift in the space of one of the adjacent businesses. Apparently the forklift had been used to carry a vending machine to break through the walls between the businesses within the warehouse.

¶4         Pima County Sheriff's Deputy Benjamin Hill and Randy, his canine partner who is trained to locate and apprehend people, arrived at the scene. The officers used the forklift to search for the perpetrators by moving large wooden storage crates in the Bekins portion of the warehouse. During that time, Randy alerted to a particular area that revealed "two crates that had the tops broken in on them . . . [that] were several crates deep in the line." Hill saw what he believed to be "a human being with bare skin" inside the first crate. Pursuant to Hill's command, Randy "stuck his head inside the gap and bit the human being inside," who responded in a "loud" manner.

¶5         Hill testified that the name of the person found in the first crate was "Randall Gray," whom he identified as the individual "sitting at the defense table wearing a white shirt." However, the person he pointed to was Wallace, rather than Gray. Wallace's attorney informed the prosecutor and the judge of this fact outside the presence

of the jury. The prosecutor then asked Hill in the presence of the jury, "I know it's been awhile, but if I were to tell you that you picked out somebody who is not Mr. Gray, is that possible?" Hill responded, "It is possible." The prosecutor did not elicit any further identification of Gray. Hill also testified that "Mr. Gray was handcuffed and taken out of the building" before officers were able to locate Wallace and the other codefendant, Michael Finck,[2] in a second crate. Wallace and Finck also were handcuffed and taken outside. Officers found a crowbar, flashlight, handgun, "walkie-talkie," and gloves in the area near the crates.

¶6 At trial, the state introduced into evidence more than two hundred photographs,[3] which defense counsel agreed were admissible as to foundation and relevance. Although defense counsel objected to the admission of a few of those photographs, to wit, those involving a firearm and a basket in a vehicle, counsel did not object to the photographs showing three men who appeared to be handcuffed and standing in front of a sheriff's vehicle (exhibits 141-145). During closing argument, the prosecutor told the jury, without objection, that although he had not shown the jury each of the photographs admitted as exhibits, the jury would "get exhibits . . . 141 through 145, which are photos of the defendants, including Finck, the other one. You will have those."

---

[2]Finck's trial was severed from Gray and Wallace's trial.

[3]The photographs are part of the record in codefendant Finck's case. In the interest of justice, we have examined the photographs as part of this appeal.

4

¶7 After the state rested, but before argument on the Rule 20 motion, Gray asserted in his opening statement: "Mr. Gray and Mr. Wallace were both in the building, but the State cannot prove that they had any involvement, or any knowledge, of a burglary or damage to this building." Nonetheless, Gray thereafter moved for a judgment of acquittal on the ground that the state had failed to present any evidence that he was the same individual found in the warehouse and arrested at the scene. Specifically, Gray's counsel maintained that in light of Hill's inaccurate in-court identification of Gray, "I don't think that we have any evidence here showing even that Mr. Gray was in the building." The trial court denied the Rule 20 motion after considering the testimony that was presented at trial, the fact that Wallace and Gray were found in the building, and the "exhibits in the form of . . . photographs."

¶8 Immediately after the trial court denied the motion, the prosecutor pointed out that Gray had acknowledged in his opening statement that he and Wallace were at the warehouse, and the prosecutor clarified that photographs of Gray, Wallace, and Finck were "already in evidence," even though they had not yet been published to the jury. Gray renewed the Rule 20 motion after closing arguments, arguing the state had failed to identify him, "other than trying to use [defense counsel's] statements." The court again denied the motion.

¶9 Gray correctly argues that "[t]he state has the burden to prove the identity of the person who committed the crime." *State v. Rocha-Rocha*, 188 Ariz. 292, 294, 935 P.2d 870, 872 (App. 1996). Specifically, Gray maintains the state failed to present evidence he was the same "Randall Gray" who was arrested and identified at the scene.

*See State v. Hall*, 136 Ariz. 219, 221, 665 P.2d 101, 103 (App. 1983) (recognizing that arrestee having same name as defendant constitutes insufficient evidence of identity). But, admissions made by counsel in opening statements are generally binding on a party, may be considered by the jury, and obviate "the necessity of fuller proof." *Moore v. Blackstone*, 20 Ariz. 328, 330-31, 180 P. 526, 527 (1919); *accord State v. Adams*, 1 Ariz. App. 153, 156, 400 P.2d 360, 363 (1965); *cf. United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (defendant bound by defense counsel's admission in closing argument that defendant failed to file valid income tax returns). Although we do not purport to consider all the possible contexts wherein admissions by counsel might, or might not, obviate the need for the opposing party to present evidence, we see little logic in overlooking Gray's admissions here. Those admissions, made by Gray's counsel while addressing the finder of fact, supported Gray's apparent mere presence defense, bought counsel a measure of credibility, and may have deterred the prosecutor from otherwise acting to remedy the very gap in the evidence Gray now seizes upon in seeking a judgment of acquittal.[4] *See United States v. Rusan*, 460 F.3d 989, 993 (8th Cir. 2006) (although "statements made by counsel during closing arguments are not evidence, concessions made by counsel as part of a trial strategy are another matter") (citations omitted).

---

[4]The prosecutor could have attempted to remedy the evidentiary defect by moving to reopen the case. *See State v. Walton*, 159 Ariz. 571, 582, 769 P.2d 1017, 1028 (1989). Under the circumstances here, however, no further evidence was needed because Gray had "suppl[ied] the evidence missing in the state's case." *Mathers*, 165 Ariz. at 66, 796 P.2d at 868.

**¶10** A trial court should grant a motion for a judgment of acquittal only if there is no substantial evidence, defined as "more than a mere scintilla," to warrant a conviction. *Mathers*, 165 Ariz. at 67, 796 P.2d at 869. Because Gray's own admissions during the trial were substantial evidence from which the jury could conclude he was the individual arrested at the warehouse, the trial court did not err in denying Gray's motion for a judgment of acquittal. We therefore need not consider whether the five photographs likewise constituted cognizable evidence that Gray was one of the three persons found at the *locus in quo*.[5]

**¶11** Gray's convictions and sentences are affirmed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed December 12, 2012.

---

[5]Gray argues that although the photographs (exhibits 141-145) may have been admissible, "[t]he only testimony to their context was improperly provided by the prosecutor in closing argument." Thus, he contends the jury did not have "adequate information with which to interpret them."

7