NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

―――――――――――――――

STATE OF ARIZONA, *Appellee,*

*v.*

JEFF ALAN LOCKWOOD, *Appellant.*

No. 1 CA-CR 13-0220
FILED 5-8-2014

―――――――――――――――

Appeal from the Superior Court in Maricopa County
No. CR2009-007924-001
The Honorable Joseph C. Welty, Judge

**AFFIRMED**

―――――――――――――――

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Margaret M. Green
*Counsel for Appellant*


―――――――――――――――

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Chief Judge Diane M. Johnsen joined.

―――――――――――――――

**J O N E S**, Judge:

¶1      Defendant Jeff Lockwood appeals his convictions for felony murder and sexual assault. On appeal, Lockwood argues the trial court erred by denying his Arizona Rule of Criminal Procedure 20 motion for judgment of acquittal on both counts. For the following reasons, we affirm the trial court's ruling, the judgment of conviction and the resulting sentences.

## FACTS AND PROCEDURAL HISTORY

¶2      We review the evidence in the light most favorable to sustaining the convictions and resolve all inferences against Lockwood. *State v. Stroud*, 209 Ariz. 410, 412, ¶ 6, 103 P.3d 912, 914 (2005). On October 21, 1994, the deceased victim, E.H., was discovered in one of Papago Park's ramada structures.[1] E.H. appeared to have been bludgeoned to death. E.H. was lying face down, and a large pool of blood had collected by his head. A large, irregularly shaped rock was found a short distance from E.H., within the blood pool. E.H.'s buttocks were exposed, as his pants were pulled down to the back of his thighs. Fecal matter and blood were present on E.H.'s buttocks and legs, and blood was on his back. There also appeared to be semen on E.H.'s right buttock.

¶3      Police officers took photographs of the scene and impounded various items, including a blood-stained pillow situated next to E.H.'s body, the large rock located near E.H.'s head, a pair of jeans found under E.H.'s body, and other assorted items of clothing positioned near E.H. Officers also impounded a blood-stained blanket found hanging over the rim of a nearby trash can; later testing revealed there were two separate semen stains on the blanket. Further, officers took fingerprints from various surfaces and items within the ramada; none of the fingerprints taken matched Lockwood.

¶4      An autopsy revealed E.H. sustained multiple injuries to his scalp and face; these injuries included, amongst others, "four distinct areas of soft tissue lacerations and abrasions," as well as communicating skull fractures, fractured nasal bones, and a fractured jaw bone. The medical examiner opined that the injuries, as well as the object responsible for the

---

[1] E.H. was homeless. Testimony at trial established that he "lived" in this particular ramada, meaning he took refuge in it at night and would vacate it during the hours in which Papago Park was open to the public.

injuries, were irregular and the injuries appeared to be the result of multiple blows to E.H.'s head.

¶5             E.H. also suffered injuries to his rectum and anus. Specifically, he sustained several mucosal tears surrounding the anal opening, as well as a one-inch internal tear of the rectal mucosa "with dark discoloration of the mucosa surrounding the tear." The internal injury resulted in a "perirectal hemorrhage" into the soft tissue. According to the medical examiner, the hemorrhage was the result of trauma; the trauma most likely caused by the insertion of a foreign object as there was "just too much force [for] a soft organ such as a penis to have caused it." Based upon the hemorrhage, the medical examiner opined that E.H. was alive at the time of the trauma. As part of the autopsy, a sexual assault kit was performed on E.H. In the course of conducting the sexual assault kit, the medical examiner swabbed the area on E.H.'s buttocks where the apparent semen stain was located.

¶6             Due to then-existing limitations on what could be done with the evidence, the investigation into E.H.'s death went cold until 2008, when the Phoenix Police Crime Laboratory began processing some of the impounded items from the crime scene. Of note, the laboratory tested the swab from E.H.'s buttocks taken as part of the 1994 sexual assault kit and swabs taken from two different places on the recovered blanket; these tests produced positive results for traces of semen. Swabs of the semen stains were packaged and sent for DNA analysis. The analysis developed a DNA profile, which ultimately matched Lockwood's.

¶7             A Phoenix police detective then traveled to Florida to interview Lockwood in March 2009. The detective informed Lockwood of E.H.'s murder in Papago Park and that his semen was found on E.H.'s body. Lockwood admitted to living near Papago Park at the time of the murder, but denied having ever visited the park. Lockwood further denied: (1) ever having any sexual contact with men, including specifically E.H.; and (2) ever masturbating outside of his own home. Moreover, Lockwood denied having any knowledge of E.H.'s murder.

¶8             Lockwood was indicted on two charges: (1) first degree premeditated murder, or in the alternative first degree felony murder, a class 1 felony (Count 1); and (2) sexual assault, a class 2 felony (Count 2). Following the close of the State's case in chief, Lockwood moved for a judgment of acquittal on both counts pursuant to Arizona Rule of Criminal Procedure 20, which the trial court denied.

**¶9** Thereafter, upon completion of the nineteen day bench trial,[2] Lockwood was convicted of first degree felony murder and sexual assault. The trial court sentenced Lockwood to a prison term of natural life on Count 1 and the presumptive term of 10.5 years on Count 2.[3] Lockwood timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A) (2014), 13-4031 (2014), and 13-4033(A)(1) (2014).[4]

## DISCUSSION

**¶10** Lockwood's sole contention on appeal is that the trial court erred by denying his Rule 20 motion. We review the denial of a Rule 20 motion de novo. *State v. Parker*, 231 Ariz. 391, 407, ¶ 69, 296 P.3d 54, 70 (2013).

**¶11** A Rule 20 motion should only be granted if "there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a); *State v. Gray*, 231 Ariz. 374, 375, ¶ 2, 295 P.3d 951, 952 (App. 2013). The key phrase – substantial evidence – requires more than a mere scintilla of evidence, meaning "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Parker*, 231 Ariz. at 407, ¶ 70, 296 P.3d at 70; *Gray*, 231 Ariz. at 375, ¶ 2, 295 P.3d at 952.

**¶12** In considering a Rule 20 motion, "'the relevant question is whether, after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker*, 231 Ariz. at 407, ¶ 70, 296 P.3d at 70 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When evaluating whether substantial evidence exists to support a conviction, courts consider both direct and circumstantial evidence. *State v. West*, 226 Ariz. 559, 562, ¶ 16, 250 P.3d 1188, 1191 (2011).

---

[2] The State initially sought the death penalty. In exchange for the State dismissing the death penalty allegation, Lockwood waived his right to be tried by a jury.

[3] Lockwood's sentences in the immediate case are to run concurrent with one another, but consecutive to a life sentence Lockwood is currently serving in Florida.

[4] Absent material revisions after the relevant dates, we cite the current version of the statutes and rules unless otherwise indicated.

A.    Sexual Assault

¶13        "A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person."  A.R.S. § 13-1406(A) (2014).  For these purposes, sexual intercourse is defined as "penetration into the penis, vulva or anus by any part of the body or by any object or masturbatory contact with the penis or vulva."  A.R.S. § 13-1401(3) (2014).  The "without consent" requirement is satisfied if "[t]he victim is coerced by the immediate use or threatened use of force."  A.R.S. § 13-1401(5)(a).

¶14        In this case, E.H. was discovered dressed only above the waist, with his pants having been pulled down below his thighs.  The attack occurred in the middle of the night, with E.H. receiving multiple blows to his head, and E.H. sustaining no defensive wounds.  The medical examiner testified that E.H. suffered internal rectal injuries so severe they were likely caused by a foreign object; he also suffered blunt force trauma to his head.  Lockwood's semen was found on E.H.'s buttocks within a mixture of blood and fecal matter, as well as on a bloody blanket.  Further, undercutting the notion the sexual activity was consensual, Lockwood denied ever visiting Papago Park, knowing E.H., having sexual contact with men, or masturbating outside of his home.  *See State v. Kemp*, 185 Ariz. 52, 59, 912 P.2d 1281, 1288 (1996) (evidence of a defendant's consciousness of guilt is relevant and admissible).

¶15        Lockwood argues insufficient evidence was presented to find he engaged in any sexual activity with E.H., let alone that the sexual activity was non-consensual.  He posits that, beyond the DNA evidence found at the crime scene, he could not be connected to Papago Park as there were no eye-witnesses that placed him there and his fingerprints were not found on the alleged murder weapon.  In support of his contention, Lockwood relies upon *State v. Mathers*, 165 Ariz. 64, 71, 796 P.2d 866, 873 (1990), which holds that "[s]peculation concerning possibilities is an insufficient basis to sustain [a conviction]."  We do not quarrel with this point of law, but Lockwood's reliance on *Mathers* is unavailing.

¶16        In *Mathers*, there was no evidence placing the defendant at the crime scene; there was merely speculation that he must have been involved based upon (1) his departure from California to Arizona to "take care of some business" earlier that day with other people involved in the crime; (2) a previous trip the defendant had taken with a co-defendant in which a person was abducted; and (3) statements the defendant made in

which he admitted he had been in Arizona during the day of the crime at issue. *Id.* at 69-71, 796 P.2d at 871-73. The *Mathers* Court found the evidence insufficient where the evidence was unable to establish the defendant's involvement in the crimes or his presence at the crime scene. *Id.* The converse is true in the case at bar, as Lockwood's DNA was not only found at the crime scene, but on the victim's body. While there were no eye-witnesses and Lockwood's fingerprints were not present at the scene, our Supreme Court has determined that no "particular piece of evidence . . . is required as a prerequisite for sufficiency," but instead has applied a totality of the circumstances approach for evaluating proof beyond a reasonable doubt. *State v. Fulminante*, 193 Ariz. 485, 494, ¶ 26, 975 P.2d 75, 84 (1999).

**¶17** Lockwood also argues that based upon the evidence, it is possible E.H. and Lockwood engaged in consensual sex. Notwithstanding that this contention flies in the face of his specific denial of having ever engaged in sexual activity with E.H. or any other men, the premise for this assertion is the medical examiner's inability to definitively say E.H.'s anal and rectal injuries resulted from consensual or non-consensual sexual activity. Nevertheless, the medical examiner testified the injuries sustained by E.H. were likely the result of a foreign object and "a significant amount of force" being used. That being the case, "'when reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the [fact finder], and the trial judge has no discretion to enter a judgment of acquittal.'" *West*, 226 Ariz. at 563, ¶ 18, 250 P.3d at 1192 (quoting *State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997)).

**¶18** Based upon the foregoing, substantial evidence was presented from which a rational fact finder might reasonably conclude, beyond a reasonable doubt, that Lockwood sexually assaulted E.H., and that he did so using immediate force or the threat of force. *See Fulminante*, 193 Ariz. at 494, ¶ 28, 975 P.2d at 84. Accordingly, the trial court correctly denied Lockwood's Rule 20 motion regarding the sexual assault count.

### B. Felony Murder

**¶19** Lockwood was also convicted of first degree felony murder. A person commits felony murder when "[a]cting either alone or with one or more other persons the person commits or attempts to commit . . . sexual assault under § 13-1406 . . . , and, in the course of and in furtherance of the [sexual assault] or immediate flight from the [sexual assault], the person or another person causes the death of any person." A.R.S. § 13-1105(A)(2) (2014).

**¶20**      Lockwood contends the evidence does not establish he was responsible for E.H.'s death. He points to the fact that his DNA was not found on the apparent murder weapon, and suggests it is possible a third-party caused E.H.'s death.

**¶21**      Criminal convictions may rest solely upon circumstantial evidence. *State v. Nash*, 143 Ariz. 392, 404, 694 P.2d 222, 234 (1985). "Moreover, the State is not required to disprove every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence." *State v. Fischer*, 219 Ariz. 408, 419, ¶ 43, 199 P.3d 663, 674 (App. 2008) (quoting *Nash*, 143 Ariz. at 404, 694 P.2d at 234).

**¶22**      There was sufficient evidence to permit the trier of fact to determine beyond a reasonable doubt that Lockwood committed felony murder. E.H. was found half naked, with the lower half of his body exposed as his pants had been pulled down. Lockwood's semen was present in two spots on the discarded blanket covered in E.H.'s blood. In one of the locations, Lockwood's semen was mixed with E.H.'s DNA. Further, Lockwood's semen was also located on E.H.'s buttocks. The medical examiner testified the stain went "through an area of blood, feces, and sort of ends in a circle," indicating the blood and feces were in place when the semen was deposited. Finally, a large rock found next to E.H.'s body was used to hit E.H. in the head multiple times, ultimately causing his death.

**¶23**      Taking into account the totality of the circumstances, a reasonable trier of fact could conclude beyond a reasonable doubt from the evidence presented that Lockwood hit E.H. in the head with the ten-pound rock in order to facilitate a sexual assault upon E.H., and that in the furtherance of the sexual assault Lockwood caused E.H.'s death. *Fulminante*, 193 Ariz. at 494, ¶ 26, 975 P.2d at 84. Accordingly, the trial court did not err by denying Lockwood's Rule 20 motion relating to the felony murder charge.

## CONCLUSION

**¶24**      We affirm Lockwood's convictions and resulting sentences.

